## UNITED STATES v. PARKINS.

District Court, D. Wyoming.　October 11, 1926.

### No. 1555.

1. Indians ⬳12—United States held to have exclusive right to use waters from streams in reservation for benefit of Indians.

Where the United States has not specifically granted to a state any right in the waters of streams within an Indian reservation, created by treaty before the state was admitted, it has the exclusive right to use such waters for the benefit of the Indians of the reservation.

2. Waters and water courses ⬳222—Landowner held without right to divert water from government irrigation system for private use.

A landowner *held* without right to appropriate to his private use for irrigation purposes water from a creek, most of which comes primarily from a government irrigation system, which uses the creek bed for a distance as a canal to reach customers below.

In Equity. Suit by the United States against George W. Parkins. Decree for the United States.

A. D. Walton, U. S. Atty., of Cheyenne, Wyo.

John J. Spriggs and F. A. Michaels, both of Lander, Wyo., for defendant.

KENNEDY, District Judge. The plaintiff seeks a decree restraining the defendant from diverting water from a certain stream, which relief sought is resisted by the defendant. The principal facts seem to be substantially as follows:

In pursuance of a treaty between the United States and certain Indian tribes, concluded in 1868 and ratified and proclaimed in 1869, the Shoshone or Wind River Indian reservation was established, and thereafter by agreement between the plaintiff and the Indians considerably diminished; the southern portion still being maintained as an Indian reservation. Somewhat later the United States, for its wards, the Indian tribes, perfected an irrigation system within the said Indian reservation, which was and is known as the Wind River irrigation project; its purpose being to furnish irrigation for lands upon the reservation. Such project has been operated for a period of time, and a consid-

erable portion of the lands reclaimed through it. The irrigation system was so constructed that the waters which were taken out of Wind river above or at the upper end of the reservation were, in the course of their transportation through a main canal, run into and through a small stream known as Mill creek, within the reservation, and continued by said canal on the opposite side of said creek, so that the waters introduced and run through the irrigation canal blended with the waters of Mill creek; it being the purpose and plan to use the bed of Mill creek for the twofold purpose of discharging flood waters and carrying waters to canals farther down the stream, where they were conveyed onto other lands for irrigating purposes.

Previous to the construction of the irrigation project, a certain portion of acreage was deeded by the United States to one of its Indian wards, and subsequently by this ward conveyed to the defendant, and later the defendant received by patent an additional acreage which had theretofore been allotted to one of the Indians. The lands of the defendant were given a water right under the Wind river project, and were for a time irrigated through the waters of that project by appropriate laterals from the main ditch. A controversy arose between plaintiff's officials in charge of the irrigation project and the defendant over the payment of operation and maintenance charges, as a result of which, and defendant's failure to pay, the water was subsequently denied him and shut off by the irrigation officials. Some time thereafter the defendant either constructed or made use of a small dam in Mill creek, below its confluence with the irrigation canal, by which he proceeded to divert waters in that creek across the lands of another Indian allottee and onto his own lands, where they were used for irrigation purposes. After a preliminary injunction had been granted by the court in this case, the defendant abandoned the taking of water from Mill creek across the lands of the Indian allottee, and by the construction of a small dam in the creek farther down diverted the waters through a ditch to his lands, where they were used for irrigation purposes, and have been so used intermittently since the commencement of the suit, the purpose of which is to prohibit the further diversion and use by the defendant of the waters from Mill creek.

The defendant has no permit, either from the plaintiff or from the state of Wyoming, for the diversion of water from Mill creek. The testimony shows that the waters of Mill

creek, especially through the ordinary irrigation season, before the project was constructed, were small in volume, and that they have been greatly augmented since the construction by the use of the bed of the stream for the discharge of flood waters, and especially by its use for waters carried to lands for irrigation lower down. The volume of the water in Mill creek is also added to materially by the seepage from the main canal.

I am of the opinion that the plaintiff must prevail in this case for four reasons:

[1] First. It is not apparent that the waters in the streams within the Indian reservation were ever specifically granted by the United States to the state of Wyoming, although it is apparently the fact that the Indian service, in promulgating its irrigation project and the officials of the state of Wyoming for the purpose of protecting all landowners who may acquire water rights, have co-operated along the line of taking out water for irrigating purposes with the consent of the state. It must be assumed, however, in the absence of any specific grant, that the government has reserved whatever rights may be necessary for the beneficial use of the government in carrying out its previous treaty rights; those rights having become fixed and established before the act of admission which made Wyoming a sovereign state. The treaty in this case, like all other treaties with the Indians creating reservations, contemplates the use and benefit of the lands within the reservation to its wards, the Indians, which likewise includes the irrigation of those lands, they being arid in character. Winters v. United States, 207 U. S. 564, 28 S. Ct. 207, 52 L. Ed. 340. So far as the issues here are concerned, it would appear that the government, in the establishment of its irrigation project, had a right to the use of the present waters in Mill creek for its Indian wards.

[2] Second. The evidence in the case shows by a strong preponderance that the flow of Mill creek consists primarily of water conveyed as a part of the irrigation project through the bed of the stream to satisfy appropriators farther down and as a result of seepage from the main irrigation canal, and in either event the waters belong to the irrigation project, which in this case makes them the property of the government. Ide v. United States, 263 U. S. 497, 44 S. Ct. 182, 68 L. Ed. 407.

Third. The evidence discloses that the defendant has no right to divert water from Mill creek, by permit granted either by the United States or the state of Wyoming.

Fourth. The evidence further discloses that the defendant has an adequate water right through the Wind River irrigation project for the irrigation of his lands, which he has neglected and refused to take advantage of, by his failure to pay maintenance charges established under that project and affecting all owners of lands using waters similarly. If he has a grievance in this respect, he should seek appropriate relief through the proper forum. This condition establishes clearly a want of equity in the case, so far as the defendant is concerned.

A decree may be entered, perpetually restraining the defendant from the diversion of water from Mill creek for the irrigation of the lands set forth in the bill of complaint.