In the Matter of the BRIDGER VALLEY WATER CONSERVANCY DISTRICT.
David JAMES, Maurice Henry, Robert E. Perry, Bertha Landers and Harold Moslander, Appellants (Objectors below),

v.

The BRIDGER VALLEY WATER CONSERVANCY DISTRICT, Appellee (Petitioner below).

No. 3412.

Supreme Court of Wyoming.

April 28, 1965.

P. W. Spaulding, Evanston, Clifford L. Ashton, Salt Lake City, Utah, for appellants.

Samuel Corson, Evanston, Thomas O. Parker, Salt Lake City, Utah, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Bridger Valley Water Conservancy District filed a petition, alleging inter alia, that it was duly organized under the law; reciting the proceedings which had been taken from the beginnings; and seeking a decree which would declare valid a contract theretofore entered into between the district and the United States of America, acting through the Secretary of the Interior and pursuant to Federal Reclamation laws. The contract provided for the construction, operation, and maintenance of the Lyman Project with reimbursable costs to be repaid by the district to the United States, the project having been authorized as one of those participating under the Colorado River

Storage Project (70 Stat. 105, 43 U.S.C.A. § 620), and called for two reservoirs to provide for the irrigation of certain lands within the Lyman district.

Paragraph 20 of the contract defines "excess lands" as that part of the irrigable land within the district in excess of 160 acres under one ownership and 320 under the ownership of a husband and wife. Paragraphs 21 and 22 provide that as a condition precedent to the right to receive project water for excess lands a large landowner must execute a satisfactory, valid, recordable contract agreeing to dispose of excess lands within ten years following the initial availability of water, the sales price to be set by appraisers.

Five owners of land in amounts exceeding 160 acres filed with the court "Protest and Objections," asserting their respective ownership of land in the district with adjudicated water rights for a portion thereof; stating that the number of owners of land in the district was approximately 230 and the amount of land in the district irrigated by waters of Blacks Fork and Smiths Fork rivers was approximately 40,600 acres; reciting the proceedings previously taken for the organization of the district; stating that in order for landowners to secure project water the district requires the owner to execute an instrument listing his presently owned lands, water rights, and the portion of his land for which he can acquire project water within the acreage limit, assigning to the district surplus water, and agreeing to abide by the rules and regulations of the district; and opposing the approval of the contract with the United States because it would violate the purpose of § 41-77, W.S.1957, would become a fraud on the owners of irrigated land within the district, and be confiscatory of the owners' rights. Objectors also asked for an injunction against the levying of any taxes on property of the district.

At the hearing, the secretary-treasurer and the president of the district were called as witnesses, both for direct and cross-examination, and a number of exhibits were introduced. Following the hearing, the objectors asked leave of the court to file an answer to the petition for approval; when their request was granted, they filed an answer in which they denied the execution of the contract and alleged that the president had signed it "with the understanding that anyone coming within the district could continue to hold the same amount of land as he had before entering the district and purchase supplementary water for use of those lands without having to dispose of any of the lands which he owned."

The court found that the district was duly organized under the Water Conservancy Act of the State of Wyoming, that all procedures were properly and legally complied with, and that the contract with the United States was properly executed, and confirmed the contract as a legal and valid obligation of the district. From this judgment, the objectors have appealed, urging error on three grounds:

(1) There was not a sufficient meeting of the minds to form the basis for a valid contract.

(2) The provisions of the contract relating to excess lands and their disposition were violative of the provisions of Art. 1, §§ 6, 28, 30, 31 and 34, and Art. 3, § 1, Wyo. Const.

(3) The provisions of the contract relating to the disposition of excess lands were ultra vires.

The appellants in support of their first point charge that there was not sufficient meeting of minds to form the basis of a valid contract between the district and the United States and insist, under the authority of Borden v. Day, 197 Okl. 110, 168 P.2d 646, that an agreement signed without negligence under the belief that it is an instrument of a different character is void. For the purposes of discussion here, we may assume that this general principle correctly states the rule of law and further that the pronouncement in another case cited by appellants, Baylies v. Vanden Boom, 40 Wyo. 411, 278 P. 551, 556, 70 A.L.R. 924, that a waiver of, or estoppel

against, any claim of fraud by the vendor or seller in securing a contract will not be given effect to preclude the vendee or buyer from setting up or relying upon such fraud in order to defeat the contract or avoid liability thereunder, might be applicable in the instant situation. This assumption would not, however, resolve the point. Appellants charge broadly, and without attempting to justify the statement, that "The evidence introduced in the instant case clearly shows that the contract as entered into does not provide for *supplemental water.*" This indicates a misconception of the situation, perhaps growing out of a failure to correctly define the word "supplemental." A meaning which would appear to be applicable here is that used in Holland v. Lincoln National Life Insurance Co., 45 N.J. Super. 66, 131 A.2d 428, 429 (affirmed 46 N.J.Super. 257, 134 A.2d 595), where "supplemental" is defined generally as "servicing, to supply what is lacking; that which is added to a thing to complete it; that which supplies the deficiency or meets a want." Appellants seem from their argument to contend that supplemental water would come from another area. The bringing of the water from an outside source is not a necessary requisite to its being supplemental. It could well be that which is conserved by the proper handling of that which has always been there but has been improvidently utilized. Another misconception is manifested in the contention that "Mr. Micheli, as President of the District, did not know and did not understand the effect of Paragraphs 20, 21 and 22 of the proposed Contract; * * * he did not know or understand the effect of the Contract and had he known or understood the effect of said provisions to be limitations of the land one may hold and receive project water and requiring that person to dispose of 'excess lands' he would not have signed the Contract now submitted for approval." Although this portion of appellants' argument is not entirely clear, we assume that their position is that Mr. Micheli believed that a landowner could hold any amount of acreage of irrigated land and still purchase project water for the entire acreage. An analysis of the testimony shows that Mr. Micheli understood the situation; he was very clear in testifying; "I understand the interpretation of that contract that you subscribe for * * * stored water up to the limitation for 160 acres per person and it has nothing to do with the adjudicated water rights on the rest of your land. You can own it and do whatever you wish with it but you do not subscribe for any more of this stored water, only to the limit of the 160 acres per person. This is my understanding and that is as I interpret the contract."

Nothing in the record shows a failure of a meeting of minds of the contracting parties or anything upon which fraud could be predicated, and appellants' first contention is, therefore, without merit.

Some reference should perhaps be made to what may well have been an underlying cause of appellants' dissatisfaction, but to which no allusion has been made in the briefs and argument here. In paragraph eight of the protest it was stated that in order for landowners to secure project water the district requires the owner to execute an instrument, listing his presently owned lands, water rights, and the portion of land for which he could acquire project water within the acreage limit, assigning to the district surplus water, and agreeing to abide by the rules and regulations of the district. To the protest was attached a blank "Petition of the Bridger Valley Water Conservancy District for Allotment of Irrigation Water," setting out among other things the requirement that the petitioner would agree to limit the water under his water rights for the period May 15 to June 30 each year except when the reservoir was full to not more than one second-foot of water for 70 acres of the presently irrigated acreage or the amount available in the stream, whichever was less. In our arid, western region, the argument is common that yields on both cropped and pasture lands are retarded, or at least are not benefited, by excessive applications of wa-

ter in the spring, followed by shortage of irrigation in the summer months. If that view be correct, the mentioned limitation on the early use of water by the landowners might be a sacrifice without an injury; but in any event, the arrangement to have the supplemental water, with the incident of limitation, is within the option of the landowners.

Appellants in their second point argue that the provisions of the contract between the district and the United States contained in paragraphs 20, 21, and 22, are violative of the Wyoming constitution. Such contention presents difficulty here for two reasons: (1) There is nothing in the record which shows that this aspect was presented to the trial court; (2) There is no comprehensive analysis before us to substantiate the assertions of unconstitutionality now made, and not even cogent argument.

■■■ It is well settled that generally questions not raised in the court below cannot be raised on appeal; and as noted in Mercer v. Thorley, 48 Wyo. 141, 43 P.2d 692, this rule has been applied to constitutional questions. Even so, it is appropriate to call attention to the misconception of appellants when they say there is no reason given why excess landowners, who have adjudicated water rights, should be required "to strip themselves, not only of their adjudicated rights, but also of the land denuded of said rights, before they can be eligible to receive water from a tax supported project." There is nothing in the contract or any regulation before the court which would indicate that any landowner applying for an allotment would be stripped of adjudicated rights. On the contrary, a fair interpretation of the evidence is that a landowner is not obligated to take project water unless he desires to do so, and it is only when he wishes project water that he must agree to some limitation on early spring use of his water rights. If a landowner agrees to a sale of excess land so that he may secure project water for the excess during the ten years he is

allowed to retain it, he would merely not be permitted at the time of sale to realize a profit upon that land because of the benefits of the *project water*.

Insofar as appellants' reference to the project's being tax supported, it should be noted that this court has previously announced its views concerning irrigation districts by saying:

"* * * The Legislature has seen fit to cause such districts to be created upon petition of a certain number of people owning or holding lands therein, and upon a hearing, after due notice, upon such petition by the district court. The method of thus establishing the districts is, we think, constitutional. * * *

"* * * The exactions authorized to be made by such districts may, in a broad sense, be termed taxes, but they are distinguishable therefrom, for they are levied for local benefits to be spread on the property in the districts in proportion to the peculiar advantages accruing to each parcel therein from the improvement made. Whether in the form of special assessments or in the form of taxes, they are essentially assessments for local benefits, and not levied for general governmental purposes, as are the taxes contemplated in the constitutional provisions mentioned [including Art. 1, § 28, Wyo.Const.] * * *." Sullivan v. Blakesley, 35 Wyo. 73, 246 P. 918, 922.

■■■ In appellants' third point, they charge that the provisions of the contract contained in paragraphs 20, 21, and 22, are ultra vires. This is predicated upon their contention that the district "does not have the power to divest large land owners of a substantial part of their acreage by reason of a contract which does not provide for *supplemental* water but in fact supplants existing adjudicated water rights and divests a large land owner of substantial value in his properties by stripping the same of appropriated water rights." As pre-

viously pointed out, this conception of appellants is erroneous and without basis. The water to be saved according to the contract is that which is unused at present or is not put to the best use. Moreover, existing adjudicated water rights are not supplanted nor are landowners divested of anything unless they elect to contract for project water. We perceive nothing ultra vires in the contract, but on the contrary view it as within the purposes stated in § 41–77.

For the reasons stated, the "Findings, Decree and Judgment" of the trial court, confirming the proceedings of the Bridger Valley Water Conservancy District leading up to and including the execution and signing of the contract with the United States, must be affirmed.

Affirmed.