Marilyn Ruth GERDOM, Administratrix of the Estate of William K. Gerdom, Deceased, Appellant (Plaintiff below),

v.

Joseph L. GERDOM and Allan D. Beebout, dba Beebout Distributing Company, Appellees (Defendants below).

No. 3623.

Supreme Court of Wyoming.

Aug. 2, 1968.

Robert R. Rose, Jr., Casper, for appellant.

R. R. Bostwick, of Murane, Bostwick, McDaniel & Scott, Casper, for appellee Gerdom.

William S. Bon, Casper, for appellee Beebout.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The litigation in this case arose out of an automobile accident in which William K. Gerdom was killed. Suit was brought by decedent's administratrix against the driver of a Chevrolet pickup which collided with the automobile in which decedent was riding as a passenger. On an allegation of gross negligence, suit was also brought against Joseph L. Gerdom, the driver of the automobile in which decedent was a passenger. The two Gerdoms were brothers.

The trial court directed a verdict in favor of Allan D. Beebout, driver of the pickup, on the theory that there was no substantial evidence of negligence on his part. Parties agreed the guest statute was applicable in the suit against Joseph Gerdom, and the issue of his gross negligence was submitted to the jury. The jury found in favor of defendant-Gerdom. From judgment entered on the directed verdict in favor of Beebout and the jury's verdict in favor of Joseph Gerdom, the administratrix has appealed.

*The Joseph Gerdom Case*

■ As far as the appeal against Joseph Gerdom is concerned, appellant claims only that error was committed in the trial by the giving of Instruction 19 pertaining to sudden emergency.[1] Plaintiff's objection to this instruction, at time of trial, was that the evidence in the case did not support such an instruction; that there was no evidence of a sudden emergency; and that all the evidence was to the contrary.

Several witnesses described the scene of the accident as a solid sheet of ice on the roadway for a distance of approximately 1000 feet. Several of the witnesses also testified that ice patches between Casper (where the Gerdom vehicle had come from) and the scene of the accident were much shorter. Witnesses generally described the roadway as clear pavement at either end of the 1000 feet of ice. We consider the testimony of the patrolman who investigated the accident of particular significance. He said it was "very icy" at the scene of the accident and "not very icy but only patchy" from Casper out to the scene of the accident.

There is no dispute that the accident happened because a house trailer being pulled by the Gerdom automobile started to slide on the ice which resulted in whipping and jackknifing. This caused the automobile to go out of control and across the road in front of Beebout's pickup which was traveling in the opposite direction, toward Casper.

Black's Law Dictionary (4th Ed. 1951) defines "emergency" as an unforeseen occurrence or condition; or a sudden or un-

---

1. Instruction 19 was as follows: "A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected, nor required, to use the same judgment and prudence that is required of him, in the exercise of ordinary care, in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exer-

cise in the same situation. (If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, he does all the law requires of him, although, in the light of after-events, it should appear that a different course would have been better and safer.)"

expected occasion for action. If the jury believed the testimony we have referred to, it could have found Joseph Gerdom was confronted with a sudden emergency when he hit the 1000 feet of ice and the trailer house started to slide. It also might have found this condition was unforeseen and without negligence on the part of defendant-Gerdom. With such a situation, it was proper for the court to instruct on the sudden emergency rule. Jackson v. W. A. Norris, Inc., 54 Wyo. 403, 93 P.2d 498, 504.

■ Actually, counsel for appellant seems to have abandoned the objection to Instruction 19 which was made at the time of trial, i. e. that the evidence did not support such an instruction, there being no evidence of a sudden emergency. The only argument made on appeal is that the instruction was misleading to the jury. Counsel claims the jury would have had to believe the only negligence to which the instruction could be applicable, with reference to Joseph Gerdom, was his control over his car *after* it struck the ice and went out of control.

Of course the instruction does not say, without negligence on defendant's part after his car struck the ice and went out of control; and we fail to see how such an idea could reasonably be read into the instruction. Authorities cited on behalf of appellant are not helpful because they simply hold that before the rule of sudden emergency will be given application, it must be clear that an emergency existed and was brought about by no negligence on the part of the person in the perilous situation. There can be no quarrel with that proposition.

■ Inasmuch as plaintiff did not offer clarifying language to the instruction, or let it be known to the trial court that she considered the instruction misleading to the jury, we think we would be justified for that reason alone in denying appellant's request for reversal and a new trial. It is well settled that generally questions not raised in the court below cannot be raised on appeal. In re Bridger Valley Water Conservancy District, Wyo., 401 P.2d 289, 292; Moore v. Kondziela, Wyo., 405 P.2d 788, 791.

Before leaving the matter of Instruction 19, however, it ought to be pointed out that such instruction is in keeping with pronouncements of this court in Dallason v. Buckmeier, 74 Wyo. 125, 284 P.2d 386, 389–390; Jackson v. W. A. Norris, Inc., 54 Wyo. 403, 93 P.2d 498, 504; and Wells v. McKenzie, 50 Wyo. 412, 62 P.2d 305, 307.

### The Beebout Case

■ In her appeal against Beebout, appellant assigns three points for reversal. The points are: (1) Because of the directed verdict, the evidence must be taken in the light most favorable to plaintiff; (2) the question of negligence is ordinarily one of fact and not of law except in the clearest case; and (3) although proceeding on his own side of the road a driver is not relieved of the duty of due care.

■ We agree with the principles stated in these points, but we do not agree that because of them the directed verdict for Beebout should be reversed. The matter to be decided is of course whether there was sufficient evidence of negligence on the part of Beebout to make a jury question. In saying the case should have been submitted to the jury, appellant relies upon Cimoli v. Greyhound Corporation, Wyo., 372 P.2d 170, claiming the two cases are very similar.

There was ample conflict in the testimony in *Cimoli* to make it necessary for the jury to decide whether the driver of the Greyhound bus acted as a reasonable man would act under similar circumstances in order to prevent a collision, after he observed the difficulty of the Cimoli car.

Mrs. Cimoli testified that after her car went out of control, on account of a flat tire, it was shimmying badly and was on the left side of the road at various times. The bus driver claimed the car could have been on the center line but never over. After the bus driver observed the Cimoli

car was in trouble, he says he applied his brakes "lightly" and reduced speed. He then continued at the reduced speed but made no effort to stop until the car turned sharply in front of him. Photographs and charts were in evidence in the *Cimoli* case which indicated tire marks made by the Cimoli car showed the left wheels of the car were over the center line 1,000 feet from the point of collision, and at 450 feet even the right wheels were practically on the center line. From that point the car turned in an irregular pattern to the right. The jury could believe, however, that the bus driver had no right to assume the automobile was out of trouble and would not again return to the left, as it in fact did.

Even the speed of the Greyhound bus in *Cimoli* was in question. The driver claims to have reduced to about 35 miles per hour. But in stopping, the bus left skid marks immediately prior to the crash measuring 79 feet 6 inches. Thereafter the bus continued in a forward direction, over a comparatively level portion of the borrow pit for 228 feet 6 inches before it stopped.

In the case now before us, Beebout testified he was traveling toward Casper at about 50 to 55 miles per hour on the dry roads and about 40 miles per hour on the icy patches. This would be well within statutory speed limits, and such speed appears to be substantially the equivalent of what other drivers on the same road estimated their speeds to be on the day of the accident.

Beebout observed the Gerdom automobile and trailer as soon as they came over the hill ahead of him. When the trailer first started jackknifing, he claims he "immediately" commenced pumping his brakes and tried to get into the ditch on his right. Because of the icy condition of the road, Beebout testified, he was unable to stop, and at the last second the Gerdom unit slid across in front of him, causing the collision on the south edge of the road (which would be Beebout's right side). The testimony given by Beebout at the trial was substantially the same story he had given the investigating patrolman shortly after the accident.

We have searched the record carefully to see if we could find evidence from which the jury could believe the facts were different from those testified to by Beebout. We find nothing that suggests a contradiction or dispute of his story. True it is, the jury would not have to believe Beebout's testimony if there was any reason not to. However, there was no evidence from which it could be inferred the facts were different, and plaintiff had the burden of proof.

In answer to our question as to what appellant claims Beebout should or could have done to avoid the accident, her attorney says he could have stopped (apparently after Gerdom was in trouble)—if the plaintiff is given the benefit of the evidence most favorable to her. With the 1000-foot solid sheet of ice on the highway which caused Gerdom's trouble, and in the absence of any evidence from which it could be reasonably inferred that a driver of ordinary care could and would have stopped short of a collision, it would be only by a process of speculation and conjecture if a jury were to conclude that Beebout could have stopped sooner.

■ Mere conjecture is never sufficient to establish liability on the part of a defendant, for injuries or death alleged to have been negligently caused; or, otherwise stated, no inference of negligence can be based on mere surmise, guess, speculation, or probability. Kalman v. Western Union Telegraph Company, Wyo., 390 P.2d 724, 726; Tower v. Horn, Wyo., 400 P.2d 146, 147; O'Keefe v. Cheyenne Chamber of Commerce, 56 Wyo. 170, 105 P.2d 279, 285; Gordon v. Clotsworthy, 127 Colo. 377, 257 P.2d 410, 411, 49 A.L.R.2d 314.

It is our conclusion that appellant has not shown reversible error on account of Instruction 19 in the Gerdom case; and that she has failed to show substantial evidence of negligence on the part of Beebout. In view of this the judgment of the district court should stand.

Affirmed.