JOHN MEIER & SON, INC., a Wyoming
Corporation, Appellant
(Petitioner below),

v.

HORSE CREEK CONSERVATION DIS-
TRICT OF GOSHEN COUNTY, Wyo-
ming; State Board of Control of the
State of Wyoming; and George L.
Christopulos, State Engineer, Appellees
(Respondents below).

JOHN MEIER & SON, INC., a Wyoming
Corporation, Appellant
(Petitioner below),

v.

HORSE CREEK CONSERVATION DIS-
TRICT OF GOSHEN COUNTY, Wyo-
ming and State Board of Control of the
State of Wyoming, Appellees (Respon-
dents below).

No. 5124.

Supreme Court of Wyoming.

Dec. 6, 1979.

Byron Hirst (argued), and W. Douglas Hickey, of Hirst & Applegate, Cheyenne, for appellant Meier.

Dan J. Pauli, of Sigler & Pauli, Torrington, and Stanley K. Hathaway, Cheyenne, for appellees Horse Creek Conservation Dist. of Goshen County.

John D. Troughton, Atty. Gen., and Christan P. Mai, Asst. Atty. Gen., for State Board of Control; and George L. Christopulos, State Engineer, and Stanley K. Hathaway and Christan P. Mai, Asst. Atty. Gen. (argued), Cheyenne, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., retired.*

GUTHRIE, Justice, delivered the opinion of the court.

Horse Creek Conservation District of Goshen County is the owner or holder of certain permits and certificates of appropriation for a total of fourteen wells in Goshen County. Certificates of appropriation have been issued for nine of these wells, and five of these wells are under permit with the rights not presently adjudicated. The District, in order to clarify the rights it held under these certificates of appropriation and permits, filed a petition seeking a change and amendment of these permits and certificates to set out the right to store water pumped from these wells as an incident of their use.

John Meier & Son, Inc. is the operator of an agricultural unit adjoining and in the vicinity of Hawk Springs Reservoir and the Hawk Springs District. This company has permits and certificates of appropriation covering both surface and ground water, which it employs in its operation and irrigation of its premises.

Hereafter, in this opinion the Horse Creek Conservation District of Goshen County will be described as the District and John Meier & Son, Inc., will be styled as Meier. The State Board of Control will be described as the Board.

On February 14, 1977, the District filed a petition seeking an amendment of its certificates of appropriation covering the nine wells upon which such certificates had been issued and also petitioned for the amendment of the permits on the five wells which had not been formally adjudicated. These petitions sought a clarification of the permits and of the certificates to include a statement of the right of supplemental storage in the Hawk Springs Reservoir. All the original permits as approved by the State Engineer, save one, contain the following notation:

> "This water to be pumped into the Hawk Spring Reservoir as supplemental water for Hawk Springs and Sinnard Water users under Permit Nos. 8514 and 4585 Enl."

The one which did not contain this notation (Permit No. U.W. 1801) had the following notation:

> "Water will be pumped into the Hawk Springs Reservoir and distributed to the lands to be irrigated through the existing irrigation system."

---

* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., retired, was assigned, having been retained in active judicial service pursuant to § 5, Art. 5, Wyoming Constitution, and § 5–1–106(f), W.S.1977, by order of the court entered on January 1, 1979.

The District, in reliance upon these permits and its interpretation had from the time of issuance pumped water from these wells into the Hawk Springs Reservoir which was stored there supplementing the water already stored in this reservoir. It has been the contention of the District throughout this entire controversy that it was their purpose and intention, when the applications were made, to secure the right to use water from these wells for direct-flow application and to supplement their storage by pumping into the reservoir and that this right should be confirmed in them by the amendment of these permits. In this view, the State Engineer's office and the Board of Control concurred.

The application of the District was occasioned by a letter from Meier to the State Engineer complaining about the decline in the water level in his wells which he attributed to the pumping activities of the District. After this, representatives from the District met with personnel from the office of the State Engineer to discuss the status and use of the water under these permits. It then developed that these permits did not specifically provide for or mention pumping and storage of the water pumped from the wells. This omission had been earlier mentioned by Ward, the then water commissioner. The District was encouraged, however, to file some proceeding to clarify what was deemed to be an ambiguity and omission.

These petitions were set for hearing and notice was published. Appellant filed with the Board its motion to dismiss raising three reasons in support. Briefly stated they were: that there was nothing in the law to allow storage of underground water, that the reservoir permit (reference to Permit Nos. 8514 and 4585E) and its adjudica-tion do not authorize the storage of anything but surface water and that the application was barred by its late filing. Meier also filed a contest to these petitions for clarification and amendment and set out various grounds of objection. They were as follows: that Meier was the owner of various ground water permits to use water from the same aquifer as that of the District; that the permits sought to be amended never authorized the storage of water produced by the wells; that water was being pumped by the District and stored in violation of the permits and that Meier and others were being injured; that the District sought to pump the wells for twelve months and that this use would amount to four times the permitted amount;[1] that, Meier had advised the State Engineer of the effect of the operation which was then being investigated by that office; and that if the petition was granted, Meier and others who use underground and surface water would be injured by the excessive withdrawal of water.

At the hearing which was held by a hearing officer, the officer announced that he would receive the evidence of injury to others but advised the appellant that the Board would confine its decision upon this matter to "the question of whether the permits and certificates of appropriation granted the right to store water at the time of their issuance." Thus was the issue framed.

In its disposal of this petition and application, the Board found that the notation upon the permits was ambiguous and that when the filings were made, it was the intent of the District that the permits be for both direct-flow application and for supplemental storage and supply for the Hawk

---

1. This writer is puzzled after an examination of the contest filed by appellant which contains the following allegation:

    ". . . The Horse Creek Conservation District wants to pump 12 months for storage and thus use *four times* its *permitted water*." (Emphasis added.)

    It may be ambiguous and subject to misunderstanding, but upon its face would seem to be a concession that the District was entitled to pump these wells for three months (¼ year) without limitation under their certificates and permits. If this be true, the Board has not granted the District additional substantial rights but has reduced its entitlement by ⅙th when it limited the pumping to 2½ months along with the additional limitations dependent upon storage in the reservoir. We, however, do not use this as a basis for disposal of this case.

Springs Reservoir and that the District had reasonably relied upon this language as authorizing such use which it had pursued from the time of the issuance. If the State Engineer's office and Board had not specifically authorized such use when the permits were issued, the omission was inadvertent and unintentional, and the permits and certificates should be amended to ". . . show that the District has the right to store water in Hawk Springs Reservoir under the conditions set forth in this order." The conditions imposed are, shortly, that the District could pump water, not to exceed 50-acre-feet per day from April 1 to June 15 of each year, or until the total quantity of water held in storage in Hawk Springs Reservoir from all sources equals 7,000 acre-feet. The order further provided:

"The exercise of the District's water rights subject to this order, may be limited at a later date."

The Water Board in no manner purported to change or attempted to effect or change the priority of these certificates or permits as to any person holding or claiming under any intervening senior rights. It made the following finding:

"As to water rights senior to the District water rights in question, storage only can be made in priority, so that there could be no injury to vested senior water rights. The record also indicates that John Meier & Son, Inc., has filed a request with the State Engineer that he undertake an investigation to determine if there is interference with senior water rights."

This finding also emphasizes the earlier statement of the hearing officer as to the scope of the proceedings and may be said to demonstrate why appellant may not raise some of the questions sought to be presented and explain why many of these contentions are not worthy or proper of discussion in this opinion.

The scope of this hearing and the issues properly considered are dependent upon the provisions of § 41–4–514(a) and (b), W.S. 1977, which are, insofar as material to these proceedings, as follows:

"(a) The state engineer is hereby authorized, upon written petition of the owner, to amend any permit to appropriate water prior to adjudication by the state board of control for the purpose of correcting errors or otherwise, when in his judgment such amendment appears desirable or necessary; provided that the total area of lands may not exceed the area described in the original permit.

"(b) The state board of control is authorized, upon the written petition of the owner, to issue amended certificates of appropriation for water rights that have been adjudicated for the purpose of correcting errors or otherwise, when in the judgment of the board it appears necessary. . . . The rights of other appropriators shall not be injuriously affected thereby."

The District invoked this statute seeking relief and the Board assumed jurisdiction to proceed thereunder. This statute is self-limiting and narrow in its application. It cannot be broadened and other elements added or injected by parties to the proceedings. It is by virtue of this statute that the matter becomes proper for hearing by the Board and the State Engineer. The issues are raised and defined in the petition of the District. The applicable rule is set out in *Williams Electric Cooperative v. Montana-Dakota Utilities Co.*, N.D., 79 N.W.2d 508, 524 (1956), where the court said,

"It is, of course, elementary that even in an administrative hearing the issues are limited to those raised by the pleadings and a hearing should be confined to the points at issue."

Although, of only most general application the cases of *Associated Enterprises, Inc. v. Toltec Watershed Improvement District*, Wyo., 578 P.2d 1359 (1978); and *Denius v. T R Twelve, Inc.*, Wyo., 589 P.2d 374 (1979), demonstrate the rationale which must be applied to this case. Both cases held that when applications were filed and heard under § 41–4–506, W.S.1977, the decision of the Board should be limited to a determination of a "good cause", this being the area of inquiry assigned to the State

Engineer by the statute and that a wide ranging inquiry involving other questions was improper. In the instant case, the statute involved upon its face requires only that the Board and the State Engineer make a determination of whether there was "an error or otherwise" and if an amendment was either "desirable or necessary." Thus the areas of inquiry which were proper for the Board and which are proper subject for appellate review are limited and not so broad as appellant would contemplate. In order that our reasons for the disposal hereof in this manner be understood, we will list the three questions which are material to our disposal. It must be first determined whether this proceeding was barred by the limitations imposed by § 41-4-327, W.S. 1977. If the Board were barred from hearing the application, that would make a complete disposal. However, because we have determined that this action is not so barred, we find that there are two remaining questions properly posed in this appeal. They are: (1) Does the law in this state authorize the storage of underground water or does it require that underground water can be used only for direct-flow irrigation and not for storage and supplemental supply? (2) Were the original permits and certificates ambiguous and was it within the power of the Board and the State Engineer to clarify them to conform to the intent of the District at the time of the filing thereof and the understanding of the State Engineer and Board at time of issuance of the privileges conferred thereby?

## THE CLARIFICATION OR AMENDMENT SOUGHT WAS BARRED BY THE STATUTE

Appellant bottoms this suggestion upon § 41-4-327, *supra*, which it contends is the statute which applies to these applications. The District filed its petition and application in reliance upon § 41-4-514, W.S.1977, and the Board proceeded, overruling an objection based upon the asserted limitations. Section 41-4-327, *supra*, is as follows:

"After any final order of the board of control adjudicating the priorities upon any stream, any party interested therein may within one (1) year thereafter apply for a rehearing for reasons to be stated in the application; and upon the filing of such application, the secretary of the board shall mail written notice thereof to every other party interested, and therein fixing and stating a time when said application will be heard."

We find it impossible to apply the limitation in this statute to this proceeding because of its obviously limited scope, applying as it does to any final order ". . . adjudicating the priorities upon any stream." The statute is clear and no amount of discussion can justify its expansion to cover these proceedings. Statutes of limitations are so construed that even if the case seems to be one within the reason, if it be not mentioned in the statute, it is not deemed that the legislature thought it proper to apply such limitations. *Roberts v. Roberts*, 62 Wyo. 77, 91, 162 P.2d 117, 121 (1948), same case subsequent appeal 64 Wyo. 433, 196 P.2d 361 (1948), *rehearing denied* 64 Wyo. 455, 197 P.2d 697.

## RIGHT TO STORE UNDERGROUND WATER

To determine the validity of this amendment, and correction of these certificates and permits, it necessarily follows that it must be determined whether, under the law in Wyoming, it is proper to authorize the storage of underground water for supplemental irrigation use. Appellant's asserted position that this is not proper and that the Board and State Engineer do not have any authority to authorize the storage of these or any underground water rests solely upon the proposition that the statutes do not anywhere directly authorize the storage of underground water. They insist that the Board only has the authority to authorize the storage of surface water.[2] There is, however, no contention that the statute for-

2. Although it refers to reservoirs and their construction, § 41-3-301, W.S.1977, recognizes the right to store "any of the unappropriated waters of the state of Wyoming" and does not limit this to surface waters.

bids storage of such water nor are we able to find any such statute which even suggests that to be the case.

When questions arise involving the power and authority of the State Engineer and the Board of Control it is vital to remember that both the Board and the State Engineer are created by the state constitution and not by the result of any legislative enactment. Their general powers are derived from the constitution and not from the legislature, §§ 2 and 5 of Article 8, Wyoming Constitution. It is further noted that, constitutionally, the Board of Control has supervision of the water, its "appropriation, distribution and diversion" within this state under such regulations as may be set by the legislature and that the State Engineer by virtue of § 5, Art. 8, has general supervision of the waters of this state and the officers who administer the same. This distinguishes the Board of Control and its operations from some other administrative agencies.

In *White v. Wheatland Irrigation District*, Wyo., 413 P.2d 252, 258 (1966), the authority of the Board of Control to change a point of diversion when they had no statutory authority was challenged. This court said in response to that contention that the authority was not subject to doubt and that the "board has broad powers, direct and implied" citing § 2 of Art. 8 of the Wyoming Constitution. The opinion further called attention to the fact that prior to the adoption of the statute authorizing this change, that the court had several times held that such change could be made by the Board as a matter of right and cited considerable authority therefor.

◼ Under our system of appropriation beneficial use is the sole and only basis therefor. *Budd v. Bishop*, Wyo., 543 P.2d 368, 373 (1975); *Ide v. United States*, 263 U.S. 497, 44 S.Ct. 182, 68 L.Ed. 407 (1924) and § 41–3–101, W.S.1977. Priorities are also dependent thereon § 3, Art. 8, Wyoming Constitution. If this court were to hold that the powers of the Board of Control are strictly limited to those as prescribed or set out specifically by the legisla-

ture, we would deny them the authority and the right of supervision of the waters of this state, their appropriation, distribution and diversion and thus defeat a clearly stated constitutional objective. The Board must, in order to insure proper administration and use of our water be said to possess such powers as will insure the maximum beneficial use of all water, without regard to its source. The determination of the State Engineer and the Board of what use will better utilize the water and insure its beneficial use must be respected by this court, because the Board and State Engineer are better equipped to dispose of such matters. *White, supra*, 413 P.2d at 259. It is to be noted that the Board of Control in this case concluded as a matter of law "that the storage of ground water for later irrigation use is a beneficial use within the provisions of Wyoming law." It may be observed at this juncture that we find no authority cited or argument made that the storage of said underground water in this reservoir is not a beneficial use or a necessary element of such use. Beneficial use is dependent upon the particular circumstance. *City and County of Denver v. Sheriff*, 105 Colo. 193, 96 P.2d 836, 842 (1939). Water pumped from a well into a tank and stored for use in a municipality is demonstrably a beneficial use and that to say that such storage of underground water could not be authorized would wreak havoc with a considerable number of our cities. Additionally, it would appear to make unlawful the storage of water in a tank for use for livestock watering which would deny the right to a beneficial use.

◼ We must hold that the State Engineer and the Board of Control have the authority to authorize the storage of water pumped from these wells into the Hawk Springs Reservoir to be used as a supplemental supply for direct-flow irrigation.

THE PROPRIETY OF THE STATE ENGINEER AND THE BOARD OF CONTROL AMENDING THESE PERMITS AND CERTIFICATES OF APPROPRIATION.

◼ Meier asserts that there is no ambiguity in the original permits and certifi-

cates and that it was thus improper to entertain these petitions. It was particularly improper to receive evidence or rely upon evidence showing a mistake and showing the intention of the parties in the original instance because it was violative of the parol evidence rule. Strangely enough, the existence of an ambiguity is clearly demonstrated by the appellant's argument and by its position which is based upon the view that the notation that the water be pumped into the reservoir "as supplemental water" must, and does mean that the water must be pumped under these permits and certificates only for direct-flow use. In its brief, Meier says the phrase means: "Such wells be limited to use for irrigation as supplemental supply as surface water direct-flow irrigation rights." It seems unusual to claim that an instrument is not ambiguous when it requires a phrase of this length and character to demonstrate and define for the court what is the real meaning of the three words "as supplemental water?"

The submitted definition of the notation upon these permits and the certificates answers the appellant's assertion that there is no ambiguity existing in them and does not bear out the statement that these are "quite explicit." Nor does Meier cite any authority to sustain his position that these are not ambiguous. Further evidence of this ambiguity is the fact that the District has, in reliance thereon and since the inception of these permits, pumped this water into storage and used it in the manner now authorized by the amended certificates and that this was done with full knowledge of the State Engineer's office and without objection which is certainly a strong basis for an inference that the permit was so understood by both these parties in spite of the amazing clarity which the appellant submits appears in these original certificates and permits.

The case of *Bulis v. Wells*, Wyo., 565 P.2d 487, 491 (1977), is a case of much assistance and is determinative of both questions as to whether there is an ambiguity existent in this order so that it would be proper to receive other evidence and consider the same in face of the parol evidence rule,[3] and also to determine whether there be an ambiguity. That case asserts that an ambiguity exists if the instrument is "capable of being understood in more ways than one" or if it "is obscure in its meaning, because of indefiniteness of expression." This notation upon these certificates and permits certainly comes squarely into both of these definitions and we would have no difficulty in applying them in this case to determine that there was an ambiguity existing in these instruments.

We have recognized in many decisions that parol evidence is admissible if an instrument is ambiguous to clarify the ambiguity and determine the intent of the parties. *Worland School District v. Bowman*, Wyo., 445 P.2d 364, 366 (1968), further proceedings 531 P.2d 889 (1975); *Goodman v. Kelly*, Wyo., 390 P.2d 244, 247 (1964); *Kilbourne-Park Corporation v. Buckingham*, Wyo., 404 P.2d 244, 245 (1965).

This is not the first Wyoming case where a party has misconceived the meaning of the word "supplemental." In the case of *In re Bridger Valley Water Conservancy District*, Wyo., 401 P.2d 289, 291 (1965), in a suit involving the use of water under a contract, the court had occasion to adopt the following definition:

"'. . . servicing, to supply what is lacking; that which is added to a thing to complete it; that which supplies the deficiency or meets a want.' . . ."

Meier's suggested definition does not fit this authority. The correction of the Board comes within this definition and particularly the last phrase.

■ Both the State Engineer and the Board of Control have broad powers, generally, and this particular statute § 41–4–514, *supra*, grants both the State Engineer and

---

3. We do not hold that the parol evidence rule is applicable to corrections or amendments of permits or certificates issued by administrative agencies. For the purpose of this case we approve its applicability in such cases, arguendo, although these facts would take it out of the rule if applicable.

the State Board of Control broad discretion upon its face when it provides if the "amendment appears *desirable or necessary*"; and in both cases submitting it to their respective judgment. It appears both necessary and proper that the rights of this District be clarified and that the intentions of the Board of Control and State Engineer be made crystal clear to avoid controversies of the character which have now arisen.

Inasmuch as the authorized corrections and amendments find their basis in the intention of the District and the Board as to the nature of the water rights granted which is demonstrated by the evidence properly received and considered along with the fact that our prior definition of "supplemental" as applied to water makes it appear that Meier's assertion that this action expanded the District's substantive rights by recognition of a new permissible use of the water has no validity.

This is further emphasized by the Board's limitation of the amount to be pumped, the restriction of the pumping to a two and one-half month period and the condition that no pumping is to be done when the storage level in the reservoir is 7,000 acre-feet and the fact that the order recognizes the right to further control this by order and the provision that disclaims any intent to determine priorities.[4]

From what has been said, the judgment of the lower court must be affirmed.

McCLINTOCK, Justice, specially concurring, with whom ROSE, Justice, joins.

I concur in the disposition of the case as set forth in the opinion of Mr. Justice Guthrie, Retired, but would like to add these special comments.

Perhaps there are good engineering reasons why it is better irrigation practice to take water out of its natural underground storage where its continued presence is fairly assured, and to put it into open storage where it is subject not only to seepage but to evaporation loss. Perhaps, just as it is necessary to have stored water available for municipal use so that there can be a definite and dependable supply to the users thereof, such surface concentration is necessary in the situation of the irrigation district. I probably should not have the temerity to raise the question since it is a technical one of fact, which appears to have been settled by the decision of the board of control.

I would emphasize, however, that my concurrence in the disposition this day made is based on the understanding that the district is not being given carte blanche to pump and store underground water during the months fixed and to the numerical limit fixed if it should be later demonstrated as a matter of fact that such pumping and storage are taking water from the aquifer, the continued presence of which therein is necessary to assure to earlier appropriators, such as Meier, the full beneficial use of their own underground water rights.

Pumping underground water to the surface and then storing the same in surface reservoirs is hardly the same thing as diverting and storing the spring runoff of streams which, if not stored, will continue to carry away water which might very well be used at a later date but cannot be used at that time. I look upon an underground water reservoir as a supply of water which

---

4. There is a discussion in 6 Clark, *Waters and Water Rights*, § 503, p. 31 (1972), appearing in a section upon "Changes in Appropriation" (which includes "nature of use") which we believe has some persuasive application and which could well serve as the philosophical basis for the allowance of the amendments with the conditions attached. It is thus said:

"It is generally held, however, that even if existing rights may be impaired, the application should not be denied if conditions can be imposed on the approval which will protect the prior vested rights. . . ."

See also, *Priority and Progress—Case Studies of The Transfer of Water Rights*, Frank J. Trelease and Dallas W. Lee, 1 Wyoming Land and Water Review, 1 pp. 1 & 26 (1966), for the following observation:

"Actually, it seems quite rare in modern times for a change in water rights to be absolutely prohibited because of damage. . . ." Sax, *Water Law, Planning & Policy*, p. 239 (1968).

must continually be replenished. Ordinarily, this would occur in the late winter and summer months when the melting snows sink into the ground and tend to fill the underground reservoir. This water will then be available to existing appropriators thereof under our underground water laws at a time when it is needed for application to the ground, which is the only real beneficial use. Storage is not in itself an end constituting such beneficial use. If the water which is replenishing the underground reservoir is removed therefrom as quickly as it comes into the reservoir, then it follows that those appropriators whose rights are senior to the district's may find, when the occasion arises for them to want the water, that it is then resting in the district's surface reservoirs, subject to further seepage and evaporation. It is not the purpose of our underground water law to permit the junior appropriator to divert the same from the appropriator who has the prior right.

I believe that the water authorities of the state have that problem in mind and construing the order of the board of control and the affirmance thereof by this court as making no blanket allowance to the district, I concur in the affirmance.