## LINCOLN LAND CO. v. DAVIS.
### No. 2633.

District Court, D. Wyoming.

May 1, 1939.

John C. Pickett, of Cheyenne, Wyo., and James G. Mothersead and R. T. York, both of Scottsbluff, Neb., for plaintiff.

C. R. Ellery and A. G. McClintock, both of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge.

This is a suit which by its prayer seeks to quiet title in plaintiff in and to certain water for irrigation purposes, to decree that the defendant has no right to the use of such water, and to perpetually enjoin said defendant from diverting it or in any wise interfering with its exclusive use, together with the irrigation works in which it is maintained by plaintiff. Issues were joined and a trial had followed by the filing of trial briefs. The material pleadings will be referred to in connection with a discussion of the evidence and facts in the case.

The jurisdictional grounds of the suit as to diversity of citizenship and the amount in controversy are not in dispute, and a finding by the Court is justified from the evidence in the case that the matter in controversy is in excess of the value of $3,000, exclusive of interest and costs. In May, 1893, one Sturgis took out an appropriation for water under the laws of Wyoming from Hawk Springs to irrigate certain lands, and in October, 1896, proceedings were had before the State Board of Control (the operating agency of the

State in the management and control of its waters), by which proof of such appropriation was made and a certificate issued to Sturgis establishing said appropriation for 8.60 cubic feet of water per second through what is known as the Hawk Springs Ditch for the irrigation of 600 acres of land in the west half of section 10, the north half of section 9, the west half of the west half of section 4, and the northeast quarter of the southeast quarter of section 5, township 20 north, and in section 32, township 21, all in range 61 west of the 6th principal meridian. There was no other or more definite description of the lands to be irrigated than as above set forth. A ditch was constructed in general conformity with the certificate of appropriation relating to the use of water for irrigation purposes, but as to the exact time that the different portions of said ditch were constructed the evidence is not clear. It does appear, however, in the earlier years that it was constructed and used from the point of diversion as far north as about the center of lot 4 in section 4 of the above described lands.

There was likewise some evidence of the ditch having originally been carried to a point farther north and across sections 32 and 33, in township 21, as evidences of such a ditch having been originally constructed remained when the ditch was later extended and placed in condition for irrigation uses. The evidence further shows that by mesne conveyances the plaintiff subsequently acquired the ownership of the permit and the ditch. The records of the transfer had evidently been lost, but the plaintiff made proof by secondary evidence of the instruments of transfer to it. Inasmuch as any rights which the defendant may have in and to the ditch and the water must apparently come through the deraignment of title from Sturgis, the defendant showing no independent title, it would seem that any discrepancies in the proof of ownership in the plaintiff would be of no consequence so far as the defendant's rights are concerned in this proceeding.

In 1911, the plaintiff made application to divert an additional supply of water from what is known as Indian Springs to supplement the original permit and was given a certificate of appropriation which more specifically described the acreage to which said water should be applied. Later, an irrigation project was established which would submerge the source of supply for the ditch in controversy and an agreement was made by the Reservoir Company which continued the right of plaintiff for the diversion covered by the original certificate of appropriation. This supplemental appropriation and agreement have no particular significance in settling the controversy between plaintiff and defendant as the original appropriation to irrigate the lands described therein was not changed. The plaintiff instituted a proceeding before the State Board of Control which appears to have been ex parte in its nature, for the purpose of clarifying the original certificate of appropriation known as No. 482, and in November, 1934, secured a purported adjudication which specifically set forth the acreage to be irrigated under the permit by defining the number of acres in each quarter section of land and in which decree the lands of the defendant were excluded from any affirmative right to the use of water. It is apparent that from the time the permit and the ditch were acquired by plaintiff that it has maintained and operated it in the irrigation of land. The defendant's land over which the dispute arises in the first instance consists of lot 4 of section 4, township 20, and the northeast quarter of the southeast quarter of section 32, township 21, all in range 61 west. This land was apparently taken up as a homestead by one Levi Hughes, and in the year 1912 a patent was issued to him by the United States for said land. The defendant is the owner of other lands in section 33, township 21, range 61, in addition to the land in sections 4 and 32, and he also claims the right to irrigate some 42 acres in said section 33. Sometime in June, 1938, the defendant by cutting the ditch banks diverted water from the ditch in controversy for the purpose of applying the same to his lands in sections 4 and 32, and proceeded to seek an apportionment of water by the Water Commissioner, whose duty it is when called upon to apportion the water on the basis of appropriations to the various water users. The defendant likewise had begun construction of laterals for the diversion of water for the irrigation of section 33, at the time this suit was instituted.

It is apparent at first glance that by the certificate of appropriation issued by the Board of Control in 1896, the lands of the defendant in section 4 and section

32 were included as there was no definite description given by quarter sections of the particular acreages in each of such quarter sections as has later been the practice. Such certificate designated the west half of the west half of section 4 and lot 4 owned by the defendant is a parcel of such described portion of section 4. Likewise, said original certificate included lands in section 32 without specifically describing them, and the northeast quarter of the southeast quarter of section 32 is obviously a part of the lands described in said original certificate. Under these circumstances, it is apparent that the plaintiff could not in an ex parte proceeding before the Board of Control eliminate such lands from any right to the use of water if there was anyone owning them who had an adverse right, unless such owner or holder had been made a party to the proceeding. It needs no citation of authority to support the doctrine that the plaintiff could not secure any decree by the Board of Control which would bind the defendant unless he were a party to such proceeding; and it is likewise doubtful whether such proceeding would be of a proper or pertinent nature in attempting to amend or clarify a former decree of the same Board, except in an adversary proceeding where all parties owning or holding lands included within the original appropriation were brought before the tribunal. At least it is plain here that the attempted clarifying decree of 1934 had no effect upon defendant's rights, whatever they may be. This latest decree of the Board of Control may therefore be discarded as affording no aid in the solution of the problem before us.

■ The defendant's case is bottomed upon two propositions. He claims the right to the use of water for the irrigation of lands in sections 4 and 32 by reason of the fact that he has continuously for more than 25 years irrigated certain acreage in these two sub-divisions by water from the ditch of the plaintiff, through its permission and consent, and has reclaimed, irrigated and cropped 32 acres in lot 4 of section 4 and 35 acres in the northeast quarter of the southeast quarter of section 32. As a second defense, he claims an agreement between himself and an agent of the plaintiff company who had charge of all the lands of said company in and around the vicinity of the lands in controversy by which in exchange for the right to build a ditch across defendant's lands in sections 32 and 33 he was to have the use of water for the irrigation of his lands in both sections 32 and 33. The agent of the plaintiff with whom these alleged conversations were purported to have taken place is dead. There is no proof that any such conversations or purported agreement were ever brought to the attention of the duly constituted officials of the plaintiff company, nor is there anything in the records of the company in regard to such purported agreement. There is no evidence that such an agreement, if made, was ever accepted or ratified by the Company. There is substantial evidence that Pearson, the agent of the company, did permit the defendant to use water from the ditch for irrigation purposes, but it is not applicable in establishing the purported agreement.

■■ Again, defendant claims under this purported agreement the right to irrigate 42 acres of land in section 33 which he has reclaimed and purports over a period of years to have irrigated through a diversion from plaintiff's ditch. Were such proof sustained as to the land in section 33 it would be of no consequence to the defendant in this proceeding, for the reason that no land in section 33 was included in the original appropriation. The defendant would have no right to irrigate land for which no appropriation had previously been taken out, and certainly the plaintiff would have no right as owner of the permit to grant the use of water for lands other than those to which the appropriation applied. The water belongs to the State and only the use of it is granted to an appropriator in the manner and method specifically permitted.

■ The foregoing conclusions would seem to leave for consideration only the question of whether or not there is proof in this case that the defendant over a long period of time has applied the water under permit No. 482 to his lands in sections 4 and 32 with the knowledge and consent of the plaintiff so as to establish upon said lands the application of water for a beneficial use. As has been repeatedly held and needs no citation of authority, a beneficial use is the ultimate foundation of every water right under the priority of appropriation system prevailing in the arid states.

The evidence upon this point is conflicting and is not altogether clear, but it does

appear that for a long period of time land in varying amounts was irrigated in both lot 4 of section 4, and the northeast quarter of the southeast quarter of section 32. In fact, the evidence shows that a considerable acreage in the southwest portion of lot 4 was among the first lands reclaimed and upon which crops were grown after the building of the ditch. In the earlier days it is probable that the chief purpose of irrigation was for the production of hay, but it appears that other crops were raised in section 32, such as corn, and that it was shown to have been irrigated because of the soft nature of the ground when an attempt was made by witnesses to drive across it. These facts were developed from independent witnesses. Defendant and members of his family testified more in detail to the extent of the irrigation and crop raising upon these two parcels.

The fact that the lands belonging to defendant were government lands when the appropriation was taken out is immaterial, if the lands were included in such appropriation and the water applied to them for a beneficial use. Kinney on Irrigation, 2nd Ed., Secs. 687 and 767. The evidence also tends strongly to show that without the inclusion of the so-called government lands no showing could have been made of the 600 acres of land susceptible of irrigation for which the permit was granted.

It can scarcely be said that the proofs in this case as to the use of water upon the two parcels of land last mentioned would justify the Court in restraining the defendant by injunctional order from the further use of the water upon them. It is unfortunate that a proceeding might not be instituted for the purpose of clarifying the rights of the respective parties who own lands included within the original permit and the ditch and works appurtenant thereto. It is quite apparent that the present proceeding is not appropriate or adequate for such purpose. It is not adequate to fix and determine the rights of the plaintiff in and to the permit and the ditch and other irrigation works except with respect to this particular defendant, as we are still in the dark as to what plaintiff's rights are in regard to the application of water for a beneficial use to specific lands. The Court has no hesitancy, however, in issuing a restraining order against the defendant as to the diversion

of water for the irrigation of lands in section 33, as manifestly the defendant has no right to use water under the permit for such irrigation nor has the plaintiff any right to grant it.

Findings and conclusions may be prepared by collaboration of counsel to conform generally with the views expressed in this memorandum which will confirm the rights of the plaintiff in and to the permit, ditch and irrigation works, so far as defendant is concerned, providing for the issuance of an injunction against the defendant diverting water for the lands in section 33, and denying the injunction against the defendant for the diversion of water for irrigation of the 32 acres in lot 4, of section 4, township 20, and the 35 acres in section 32, township 21, all in range 61, with an appropriate judgment based thereon, reserving all proper exceptions to both parties, and providing that each party shall pay his own costs, which findings, conclusions and judgment shall be presented within twenty days of the date of this memorandum.