GREEN RIVER DEVELOPMENT
COMPANY, Appellant
(Petitioner/Respondent),

and

Pacific Power & Light Company, a
corporation, (Respondent),

v.

FMC CORPORATION; Texas Gulf, Inc.;
Allied Chemical Corporation; Church &
Dwight Company, Inc.; and Charles
Price, Joseph Murdock, Mike Noble,
Edna Mae Swain, Doris Luman, John E.
Wardell, Albert P. Sommers, Ted L. Hig-
gins, Harry Steele, Martin Wardell, Jr.,
Lance Hill and J.P. Barlow, Appellees
(Petitioners/Respondents).

The WYOMING STATE ENGINEER,
Appellant (Respondent),

v.

GREEN RIVER DEVELOPMENT COM-
PANY; FMC Corporation; Texas Gulf,
Inc.; Allied Chemical Corporation;
Church & Dwight Company, Inc.; and
Charles Price, Joseph Murdock, Mike
Noble, Edna Mae Swain, Doris Luman,
John E. Wardell, Albert P. Sommers,
Ted L. Higgins, Harry Steele, Martin
Wardell, Jr., Lance Hill and J.P. Barlow,
Appellees (Petitioners/Respondents),

Pacific Power & Light Company, a
corporation, (Respondent).

Nos. 5770, 5771.

Supreme Court of Wyoming.

March 2, 1983.

340

Wm. R. Jones of Jones, Jones, Vines & Hunkins, Wheatland, for Green River Development Co., appellant in No. 5770 and appellee in No. 5771; Lawrence J. Wolfe, Asst. Atty. Gen., Cheyenne, for The Wyoming State Engineer, appellant in No. 5771.

James E. Fitzgerald and Sharon A. Fitzgerald, Cheyenne, for appellee FMC Corp.

John Sundahl of Godfrey & Sundahl, Cheyenne, for appellees Texas Gulf, Inc. and individual Ranchers.

Robert H. Johnson, Rock Springs, for appellees Allied Chemical Corp. and Church & Dwight Co., Inc.

John D. Erdmann, Asst. Atty. Gen., Cheyenne, filed a brief in behalf of the State Board of Control.

Before ROONEY, C.J.*, and RAPER, THOMAS, ROSE ** and BROWN, JJ.

ROSE, Justice.

## NATURE OF THE CASES

On December 27, 1977 Green River Development Company (sometimes called Green River, or GRDC), petitioned the Wyoming State Engineer, seeking to amend four Green River water permits that it had acquired in 1948. These permits carry the following priority dates: December 22, 1908; December 28, 1910; March 23, 1920; and January 21, 1921.

Under the authority alleged to be contained in § 41–4–514, W.S.1977,[1] the petition asked the State Engineer to change the use of 131.22 cfs of permit water during the irrigation season to 20.18 cfs year-round for

* Chief Justice since January 1, 1983.

** Chief Justice at time of oral argument.

1. At the time of the filing of the petition, § 41–4–514(a), W.S.1977 provided in pertinent part—and in all material respects still provides:

"Correction of errors in permits; petition for amended certificate of appropriation; hearings on petition; notice; costs.

"(a) The state engineer is hereby authorized, upon written petition of the owner, to amend any permit to appropriate water prior to adjudication by the state board of control for the purpose of correcting errors or otherwise, when in his judgment such amendment appears desirable or necessary; provided that the total area of lands may not exceed the area described in the original permit."
The balance of the section has nothing to do with an application to the State Engineer.

industrial purposes and to change the place of use, point of diversion and means of conveyance.

The purpose for the requested change from Sublette County to Sweetwater County—some 134 miles away—was to enhance the water supply and thus the steam power generation capabilities of Pacific Power and Light Company's Jim Bridger Power Plant. The request was opposed by affected industrial and agricultural appropriators Allied Chemical Corporation, Church & Dwight Co., Inc., FMC Corporation, Texas Gulf, Inc., Charles Price, Joseph Murdock, Mike Noble, Edna Mae Swain, Doris Luman, John E. Wardell, Albert P. Sommers, Ted L. Higgins, Harry Steele, Martin Wardell, Jr., Lance Hill and J.P. Barlow (sometimes called Contestants). These parties urged that § 41–4–514(a) did not authorize the State Engineer to enter the order requested, and that change of use, place of use, point of diversion and means of conveyance of the state's water could only be accomplished through compliance with the standards established by § 41–3–104, W.S.1977 [2] and § 41–3–114(a), W.S.1977. [3]

FACTS

The water utilization in question is that part of the water embraced by the permits which has never been used, which is to say that the lands described by the petition as being included in the permits have never been irrigated, farmed or applied to ranching purposes. [4] There has, in fact, been no beneficial application of the water which is sought to be transferred in this action even though a part of the original permit water has been appropriated and applied to beneficial use. Since none of the water in litigation here has been diverted, there is no historic rate of diversion and no historic consumptive use. Additionally, GRDC does not own any of the lands embraced by the petition. The United States of America owns 8,104 acres of the land and it has not consented to the petition. The State of Wyoming is the owner of the remaining 1,012 acres and, while the State Board of Land Commissioners did consent to appellant's filing the petition, the State did not join in the petition as a party and took no position with respect to its ultimate success

2. Section 41–3–104, W.S.1977 provides:

"Procedure to change use or place of use. "(a) When an owner of a water right wishes to change a water right from its present use to another use, or from the place of use under the existing right to a new place of use, he shall file a petition requesting permission to make such a change. The petition shall set forth all pertinent facts about the existing use and the proposed change in use, or, where a change in place of use is requested, all pertinent information about the existing place of use and the proposed place of use. The board may require that an advertised public hearing or hearings be held at the petitioner's expense. The petitioner shall provide a transcript of the public hearing to the board. The change in use, or change in place of use, may be allowed, provided that the quantity of water transferred by the granting of the petition shall not exceed the amount of water historically diverted under the existing use, nor exceed the historic rate of diversion under the existing use, nor increase the historic amount consumptively used under the existing use, nor decrease the historic amount of return flow, nor in any manner injure other existing lawful appropriators. The board of control shall consider all facts it believes pertinent to the transfer which may include the following:

"(i) The economic loss to the community and the state if the use from which the right is transferred is discontinued;
"(ii) The extent to which such economic loss will be offset by the new use;
"(iii) Whether other sources of water are available for the new use.
"(b) In all cases where the matter of compensation is in dispute, the question of compensation shall be submitted to the proper district court for determination."

3. Section 41–3–114(a), W.S.1977 provides:

"(a) *Petition to board of control or state engineer.*—Any person, association or corporation having heretofore acquired a right to the beneficial use of the water of any stream in the state of Wyoming, either adjudicated or unadjudicated, who desires to change the point of diversion of his or their appropriation or the point of diversion and means of conveyance of such appropriation, shall petition therefor to the state board of control if the water right has been adjudicated, or to the state engineer if the water right is unadjudicated."

4. GRDC says in its brief:

"Beneficial application has begun, but it has not yet been completed for all of the water or lands under the permits."

or failure. The State Land Commissioner described the State's consent as being equivalent to "a quitclaim deed to the Brooklyn Bridge."

Green River Development Company acquired the subject water permits in order to develop an agricultural irrigation project on some desert lands in Sublette County. The record shows that at the inception of the project in the late 1950's, GRDC expended some money to construct facilities to irrigate some 10,100 acres of land and, at any time relevant to this litigation, approximately 7,410 acres of this land have been and are presently being irrigated by permit water that was authorized for agricultural purposes. However, Green River is not attempting to transfer any of the water which has been applied to a beneficial use. Even so, it is to be noted that to irrigate the land from which it does wish to transfer water, additional facilities would have to be constructed. Part of the permit water in question is for lands where desert land entries have been denied because the federal government determined, pursuant to federal standards, that these lands were not irrigable.

By order dated February 4, 1981 and amended February 24, 1981, the State Engineer authorized a change in use, place of use, point of diversion and means of conveyance to the Pacific Power and Light plant for that part of appellant's original permit water which had not previously been beneficially utilized. This directive contemplated a change on the order of 2,000 acre feet of water per year; it authorized a change in means of conveyance; it assessed a 25% conveyance loss, leaving an annual entitlement of 1,500 acre feet, and allowed diversion for a maximum period of 92 days, from May 1 through July 31 of each year.

Throughout the course of this litigation, it has been and it continues to be the appellant's position that the provision of § 41–4–514(a), supra, which says the State Engineer is authorized

"*to amend water permits* prior to adjudication *for the purpose of correcting errors or otherwise when in his judgment such amendment seems desirable or necessary,*" (emphasis added)

is sufficient authority for the entry of the Engineer's orders in question here.

Since the Engineer's decision was unacceptable to either Green River or the Contestants, the Contestants appealed to the Board of Control while Green River Development Company appealed directly to the district court. This latter appeal sought to put in issue not only the substantive aspects of the order but also the jurisdiction of the Board of Control to hear the appeal. Undeterred, the Board of Control assumed jurisdiction under authority of § 41–4–517, W.S.1977 [5] and Article 8, § 2 of the Wyo-

---

5. Section 41–4–517, W.S.1977, 1982 Cum.Supp. provides:

"Appeal from action of state engineer or order of board of control.

"Any applicant feeling himself aggrieved by the endorsement made by the state engineer upon his application, may, in writing, in an informal manner and without pleadings of any character, appeal within sixty (60) days of the date of such endorsement, and notice thereof to the applicant, to the board of control for an examination and reversal of any such action of the state engineer. Upon receipt of such an appeal, the secretary of the board of control shall notify the members of the board of control and upon receipt of replies from them shall fix a date, as early as may be possible, when such appeal shall be heard before the board. All parties directly interested in the appeal and those who claim an adverse interest thereto, shall be duly no-

tified and shall be heard at such hearing if appearance is made. Any person or persons feeling himself or themselves aggrieved by any order or determination of the board of control in cases embracing such appeals from the state engineer, may within six (6) months from the date of such action by the board of control, and notice thereof to the applicant take an appeal to the district court of the county in which the greatest use of water is proposed to be made under the application. The procedure in such appeals shall be in conformity with the provisions of sections 874 [§ 41–4–401], 875 [§ 41–4–402], 876 [§ 41–4–403], 877 [§ 41–4–404], 878 [§ 41–4–406], 879 [§ 41–4–407], 880 [§ 41–4–408], 881 [§ 41–4–405], 882 of the Revised Statutes of 1899 and section 1, chapter 104, Session Laws of 1903 [§ 41–4–207]. The attorney general shall, in such cases, represent the state board of control."

ming Constitution,[6] thus rejecting Green River's contention that the appeal should be taken directly to the district court.

Since the Board of Control assumed jurisdiction, Green River also filed a notice of appeal which sought to have the Board of Control modify several aspects of the State Engineer's decision. After a hearing, the Board reversed the order of the State Engineer.

All parties appealed from the Board of Control's order, and the district court thereafter consolidated the appeals, heard all contentions from whatever source and upheld the Board of Control's reversal of the State Engineer's orders. From this judgment the Wyoming State Engineer appeals the trial court's decision in Case No. 5771, and Green River Development appeals in Case No. 5770. The appellees in each appeal are the following persons and entities: FMC Corporation, Texas Gulf, Inc., Allied Chemical Corporation, Church & Dwight Company, Inc., Charles Price, Joseph Murdock, Mike Noble, Edna Mae Swain, Doris Luman, John E. Wardell, Albert P. Sommers, Ted L. Higgins, Harry Steele, Martin Wardell, Jr., Lance Hill, and J.P. Barlow; Green River Development Company is also an appellee in Case No. 5771.

### THE ISSUES

Both sides in both appeals identify numerous issues for resolution here but the determinative question is that which asks whether § 41–4–514(a) is applicable for purposes of authorizing the State Engineer's orders of February, 1981 or whether the State Engineer is without this or any such authority whatsoever. In other words, this appeal addresses itself, in the main, to a statutory interpretation question.

In the course of deciding whether the State Engineer had the authority to change the use, place of use, point of diversion and means of conveyance under § 41–4–514(a), we must ask: What is the difference between a water right and a water permit where the water has not been applied to a beneficial use?[7] In the event we find that significant differences do exist, we must then identify and evaluate the salient change of use and diversion inconsistencies which pertain to any such perceived differences. The reason we say this inquiry must be made is because GRDC and the State Engineer press for a theory which holds that, since we are concerned with amending "permits" to apply the waters of the state of Wyoming to beneficial use at some future date (and therefore "water rights," which are conditioned upon the predicate that water has been applied to beneficial use are not involved), the State Engineer was not bound under § 41–4–514(a) to the change of use, place of use, point of diversion and means of conveyance constraints which are imposed upon the Board of Control when considering water right transfers under the provisions of § 41–3–104, § 41–3–114(a) and the case law relating to these statutes—nor was he bound by any other inhibiting factors except his own "judgment." (§ 41–4–514(a)).

To hold as urged by Green River and the State Engineer would be to give the State Engineer almost unbridled authority under § 41–4–514(a) to change use, place of use, point of diversion and means of conveying permit waters of this state while the Board of Control is, by reason of the directives of § 41–3–104 and § 41–3–114(a), and our

6. Article 8, § 2 of the Wyoming Constitution provides in part:

"There shall be constituted a board of control, to be composed of the state engineer and superintendents of the water divisions; which shall, under such regulations as may be prescribed by law, have the supervision of the waters of the state and of their appropriation, distribution and diversion, and of the various officers connected therewith. Its decisions to be subject to review by the courts of the state."

7. In some, but not all, cases, the certificate of appropriation contemplated by § 41–4–511, W.S.1977, 1982 Cum.Supp. will not issue until the water has been beneficially applied. See § 41–4–506, W.S.1977. In this case it is admitted that there has never been a beneficial application of the permit water which the Green River Development Company seeks to transfer even though there has been a beneficial use of some of the water embraced by the permits.

opinion which interprets these statutes,[8] severely restricted in the exercise of its discretion with respect to changing use, place of use, point of diversion and means of conveyance of water rights. For example, where water rights are concerned § 41–3–104 confines change of use and place of use to situations where it can be shown

" * * * that the quantity of water transferred by the granting of the petition shall not exceed the amount of water historically diverted under the existing use, nor exceed the historic rate of diversion under the existing use, nor increase the historic amount consumptively used under the existing use, nor decrease the historic amount of return flow, nor in any manner injure other existing lawful appropriators." (Emphasis added.)

In interpreting this statute in Basin Electric Power Cooperative v. State Board of Control, Wyo., 578 P.2d 557 (1978), we said an appropriator obtained a transferable water right only to the extent that he has put his appropriation to beneficial use. The appellants here urge that this restraint does not apply to water permit transfers. Additionally, where a transfer of a water right is in issue, the Board of Control may, under § 41–3–104, W.S.1977, consider the potential economic loss to the community and the state, the extent to which such economic loss will be offset by the new use, and whether other sources of water are available for the new use. In this case, GRDC must somehow be able to avoid the impact of § 41–3–104 because it is unable to comply with any of the standards and safeguards contained therein. Nor could it comply with § 41–3–101, infra n. 11, which requires an application to beneficial use.

Such a resolution of the question as is urged by the appellants would allow water permittees to assign parts and parcels of their permit water to beneficial use while speculating with the balance of the waters embraced by their permits, providing they were successful—as they were in this case for 60 or more years—in convincing the State Engineer to extend the time within which the statute orders the permit water works completed and the appropriation perfected.[9] Speculation with the right to use—or not use—and beneficially apply—or not beneficially apply—the waters of this state through such utilization of the State Engineer's discretionary authority is plainly contrary to the public water policy of Wyoming. Scherck v. Nichols, 55 Wyo. 4, 95 P.2d 74 (1939), and Basin Electric Power Cooperative v. State Board of Control, supra. The scheme that appellants advocate would circumvent historical change of consumptive use and diversion concepts which are near, dear and integral to the water law of Wyoming as exemplified by the requirements for water rights transfers and diversion changes contained in § 41–3–104 and § 41–3–114. If we were to agree to the interpretation of the controversial language of § 41–4–514(a) which is urged by the appellants, the result would be that the philosophy of beneficial use and priority protections that mothered these aforementioned statutory constraints for water right changes would stand rejected where permit waters are concerned.

For this court to hold as the appellants suggest would be for it to slash the warp and woof of this state's hard-won water policy with a knife sharpened upon the whetstone of standardless, unbridled agency authority and inequity. This we cannot do.

We will affirm the trial court through a holding that says that the State Engineer may not, under any present statutory authority, change the use, place of use, point of diversion and means of conveyance of waters embraced by a bare permit to appropriate the waters of the state of Wyoming. This holding involves a recognition that § 41–4–514(a) grants the State Engineer

---

**8.** See Basin Electric Power Cooperative v. State Board of Control, Wyo., 578 P.2d 557 (1978).

**9.** See § 41–4–506, W.S.1977 entitled "Time limits for commencing and completing construc-

tion work; extensions; forfeiture of rights; cancellation of permit; notice of date of expiration to appropriator."

authority to amend permits for the purpose of

"correcting errors or otherwise, when in his judgment such amendment appears desirable or necessary."

However, our decision will require the restriction of the exercise of the Engineer's discretion to the business of error-correcting. We will hold that the State Engineer's error-correcting discretion must be limited to the correction of such errors as are contained in the original permit as those errors are established by proof that the permit was not originally—or by any valid extension—issued in conformity with the intent of the applicant and/or the State Engineer.[10]

The facts here disclose that there was no application of the permit waters that are in contest here to beneficial use and therefore appellant GRDC owned no transferable water right. *Basin Electric Power Cooperative v. State Board of Control,* supra. Additionally, there being no such error of record as is contemplated by the statute for amending permits (e.g., § 41–4–514(a), supra n. 1), the appellant GRDC has no such interest in the permit waters at issue here as could be considered eligible for transfer—the State Engineer has no authority to undertake the transfer and the only administrative agency authorized by statute to transfer the use, place of use and to change points of diversion and means of conveyance for the waters of the state of Wyoming, is the Board of Control under the authority contained in § 41–3–104 and § 41–3–114(a).

## THE LAW

### Jurisdiction

Even though the parties make jurisdiction arguments, we find that there is no legitimate issue before us having to do with which court or agency had jurisdiction to hear the appeal from the orders of the State Engineer because Judge Hamm, in

the review process, very wisely accepted appeals from whatever agency first considered the complaints—whether it be the State Engineer or the Board of Control—and then proceeded to decide all relevant issues without respect to technical jurisdiction objections. Thus, the questions bearing upon whether the State Engineer or the Board of Control had original subject-matter jurisdiction and whether appeals should or should not have gone to the Board of Control from the ruling of the State Engineer and *then* to the District Court, or whether they should have originated in the Board of Control with an appeal to the district court, are not now important to our concerns here. These issues are moot since all parties have had and are having their contentions considered at all agency and court levels.

*The State Engineer's authority with reference to change of use, place of use, point of diversion and means of conveyance of water embraced by water permits*

Our considerations here remain ever mindful of the fact that the Wyoming state legislature—as it has with water rights (e.g., § 41–3–104 and § 41–3–114(a))—has never adopted a statute authorizing the change of use, place of use, point of diversion and means of conveyance of whatever right to use the waters of Wyoming a water permit carries with it. The legislature has, of course, authorized the State Engineer to amend permits to correct errors (§ 41–4–514(a)). It is this statute that the State Engineer says is broad enough to include the power to change the use, place of use, point of diversion and means of conveyance of permit water authorized 60 to 70 years ago and never put to use, in circumstances where it is not even contended that errors occurred in the original authorization. Appellants' position is that the permits in issue are not water rights since the waters envisioned by the permits have never been so adjudicated—have not been the subject of a

---

**10.** See our discussion of *John Meier & Son, Inc. v. Horse Creek Conservation District of Goshen* *County,* Wyo., 603 P.2d 1283 (1979), infra.

certificate of appropriation—nor have they been put to beneficial use as required by § 41–3–101, W.S.1977.[11] From this predicate the appellant State Engineer argues that the provisions of § 41–3–104 and § 41–3–114 do not therefore impact upon the exercise of his discretion to change the use, place of use, point of diversion and means of conveyance of water embraced by water permits as that discretionary authority is given him by § 41–4–514(a).

We assume that the appellants mean that a permittee's interest in the waters of the state—although real and valuable—is not a "water right" in the appropriated and adjudicated sense of the word for the reason that the permit water has not been diverted and applied to a beneficial use and therefore the holders of the permit would not be eligible to receive a certificate of appropriation. See: § 41–4–511, W.S.1977, and Trelease, Water Law Cases and Materials, p. 36, (3d ed. 1979), where it is said that an appropriative water right has been said to consist of (1) the intent to appropriate water, (2) notice to others of the appropriation, (3) compliance with state prescribed formalities, (4) a diversion of water, and (5) application of the water to a beneficial use. Also see: *Wyoming Hereford Ranch v. Hammond Packing Co.,* 33 Wyo. 14, 236 P. 764, 770 (1925), where it is held:

"By a statute passed in 1909, a 'water right' is defined as 'a right to use the water of the state, when such use has been acquired by the beneficial application of water under the laws of the state relating thereto, and in conformity with the rules and regulations dependent thereon.' C.S.1920 § 832."

11. At the time of the filing of the petition, § 41–3–101, W.S.1977 read:

"*A water right is a right to use the water of the state, when such use has been acquired by the beneficial application of water under the laws of the state relating thereto,* and in conformity with the rules and regulations dependent thereon. Beneficial use shall be the basis, the measure and limit of the right to use water at all times, not exceeding the statutory limit except as provided by section 122–117 Revised Statutes of Wyoming, 1931, as amended by chapter 105, section 1, Session Laws of Wyoming, 1935 [§ 41–4–317]. Water being always the property of the state,

We agree with appellants when they say that here we are concerned with permits for the *future* use of water and not adjudicated "water rights" under which water has been beneficially used. Therefore this court is comfortable with a proposition which avers that the statutes pertaining to change of use, place of use, point of diversion and means of conveyance of "*water rights*" (emphasis added) (§ 41–3–104 and § 41–3–114(a)) may indeed not be regarded to be *literally* applicable—at least this would be so if it were conceded that applicability depends upon an · admission that those statutes speak only of adjudicated water rights. Even so—and remembering that we are involved in a statutory-interpretation question—while these water right statutes may not have *literal* applicability as we contemplate the properties of a water permit, they are, in light of the fact that they have been enacted for the purpose of carrying out the beneficial-use policy of Wyoming's water law as announced in § 41–3–101, possessed of telling relevance as an aid to deciding whether or not the appellant State Engineer possesses the authority to change the use, place of use, point of diversion and means of conveyance of permit water under § 41–4–514(a). This is so because, as announced in § 41–3–101, W.S.1977, the statutorily proclaimed water policy of this state is that

"* * * *beneficial use shall be the basis, the measure and limit of the right to use water at all times* * * *." (Emphasis added.)

In *Ide v. United States,* 263 U.S. 497, 505, 44 S.Ct. 182, 184, 68 L.Ed. 407 (1924), the United States Supreme Court held:

rights to its use shall attach to the land for irrigation, or to such other purposes or object for which acquired in accordance with the beneficial use made for which the right receives public recognition, under the law and the administration provided thereby. Water rights for the direct use of the natural unstored flow of any stream cannot be detached from the lands, place or purpose for which they are acquired, except as provided in sections 122–402 [§ 41–3–102] and 122–403 [§ 41–3–103], Revised Statutes of Wyoming, 1931, pertaining to a change to preferred use, and except as provided in section 1 of this act [§ 41–4–514]." (Emphasis added.)

" * * * In Wyoming, an appropriation which is not useful is of no effect, for, under the law of that State beneficial use is the basis, measure, and limit of all appropriation."

This beneficial-use concept has been acknowledged in numerous decisions of this court including *Basin Electric Power Cooperative v. State Board of Control,* supra, *State ex rel. Christopulos v. Husky Oil Company of Delaware,* Wyo., 575 P.2d 262, 275 (1978), and *Budd v. Bishop,* Wyo., 543 P.2d 368, 373 (1975). It was said in *Lincoln Land Co. v. Davis,* 27 F.Supp. 1006, 1008 (D.Wyo.1939) that

" * * * beneficial use is the ultimate foundation of every water right under the priority of appropriation system prevailing in the arid states."

While it is true that the cases which constitute this body of authority were, in the main, concerned with water rights, they are nonetheless useful to this decision for the purpose of ascertaining the public water policy of this state.

In our search for the legislative intent extant at the time of the enactment of this state's water statutes together with their various amendments,

" * * * we must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of the law and all other prior and contemporaneous facts and circumstances. *Carter v. Thompson Realty Co.,* 58 Wyo. 279, 131 P.2d 297." *Basin Electric Power Cooperative v. State Board of Control,* 578 P.2d at 563.

The State Engineer's authority under § 41–4–514(a) cannot be exercised outside the parameters of the state's beneficial-use policy. That is, even though § 41–4–514(a) gives the Engineer the authority to

" * * * amend any permit to appropriate water * * * for the purpose of correcting errors or otherwise, when in his judgment such amendment appears desirable or necessary * * *,"

this authority cannot operate in a vacuum in such a way as to leave it unimpressed with and impervious to the state's water policy which conditions the *"right to use the water"* (emphasis added) upon its beneficial application.

It follows, then, that all Wyoming water statutes which are structured to identify, explain and further the state's water policy will be considered to have special relevance to our consideration of any given water statute—such as § 41–4–514(a)—which may appear to be inconsistent with that policy, or under which statute a state official is charged with exercising his or her authority in a way that is alleged to be in excess of the powers granted thereby. It is in this sense that § 41–3–104, and § 41–3–114(a) are relevant to our considerations here because, in the absence of statutes pertaining to water permits, these are the only extant legislative enactments which contemplate the manner in which "the right to" beneficially "use the water" (§ 41–3–101) of Wyoming will be utilized in situations where an agency or court has under its consideration issues which pertain to changing use, place of use, point of diversion and the means of conveying the waters of Wyoming. These are the legislative directives, in other words, which tell us what protective measures the legislature expects will be taken when considerations involving water-use transfers are up for resolution by the courts and appropriate administrative agencies.

With these thoughts in mind, we are here moved to the observation that for us to hold that § 41–3–104 and § 41–3–114(a) and the cases interpreting their meaning have no public policy overtone and applicability to the interpretation of the State Engineer's authority under § 41–4–514(a), would be as though we were to accede to a theory which advocates that a water-right acquisition does not, in the permit stage, contemplate the beneficial use of the waters of the state (e.g., § 41–3–101)—is not, in other words, entitled to the kind of protection and demanding of the sort of standards and safeguards which are applicable to the use of water under an adjudicated water right, all as contemplated by § 41–3–104 and § 41–

3–114. To so hold would constitute an acknowledgment that this court finds the permit phase of water right acquisition to be a kind of never-never land in which the authority of the State Engineer is indefinable, indiscernible and indescribable. It would be as though we were to say that this authority may be exercised absent the burden of inhibiting standards or protective restrictions, and with respect to which the State Engineer is possessed of all such leeway in these matters as will allow him to do whatever pleases him. The appellants in fact suggest that this is the nature of the broad discretionary powers possessed by the State Engineer where transfer of permit rights is under consideration, since § 41–4–514(a) provides that the Engineer is authorized to amend a permit "when in his judgment such amendment appears desirable or necessary." According to the Engineer and GRDC, this authority, unrestrained by legislative standards limiting the parameters of its application, envisions, for purposes of this case, the Engineer's authority to change the use, place of use and point of diversion of agricultural permit water to a point 134 miles away to be utilized for industrial purposes when the waters embraced by these permits—now to be assigned to another place and a different use—have not been beneficially applied to the land or the use for which they were granted for 60 to 70 years. The appellants argue that this authority exists free from any such restrictions as would, under the same or similar circumstances, impede the exercise of the Board of Control's authority where the transfer of a water right is under consideration.

That is not what the water law of this state envisions.

### What is a water permit?

■ The State Engineer says in his brief that

"The permits * * * represent inchoate rights, [that] have not ripened into a complete water right but they are valid and are entitled to legal recognition and protection."

This may be a fairly accurate description of what a permit to put the state's water to beneficial use actually is. *Campbell v. Wyoming Development Co.,* 55 Wyo. 347, 100 P.2d 124, 142, reh. denied 55 Wyo. 347, 102 P.2d 745 (1940) uses the word "inchoate" when speaking of a water permit. Black's Law Dictionary, 5th Ed., defines "inchoate" as something that is

"[i]mperfect; partial; unfinished; begun, but not completed * * *."

An "inchoate right" as distinguished from a "vested right" is that which is not yet completed or finished, *Hutton v. Autoridad Sobre Hogares de la Capital,* 78 F.Supp. 988, 999, (D.C. Puerto Rico (1948)). In *Taussig v. Moffat Tunnel Water & Development Co.,* 106 Colo. 384, 106 P.2d 363, 367 (1940), the Colorado Supreme Court said:

"So long as no water has been applied to beneficial use, we are concerned only with an inchoate and an unperfected right."

When the statutes pertaining to the application for and the issuing of a water permit are taken into account, (e.g., §§ 41–4–501 through 512) a water permit may then be described as the authority to pursue a water right—a conditional but unfulfilled promise on the part of the state to allow the permittee to one day apply the state's water in a particular place and to a specific beneficial use under conditions where the rights of other appropriators will not be impaired. In the meantime, the state withholds the property interest in the water described by the permit as well as the final adjudication as to the place of its use and the point of diversion for the ultimate benefit of the applicant, pending completion of certain statutory requirements and the construction of the water works. When the petitioner has complied with statutory requirements, the state's promise is directed by statute to be fulfilled with the issuing of a certificate of appropriation, the date of priority to be the date upon which the application for the permit was filed. The application for and the obtaining of a water permit is the necessary first step which has the effect of temporarily reserving certain of the state's waters in order that a certificate of appro-

priation for a water right may be later acquired by the petitioner. The permit requirement is mandatory before a lawful appropriation may be made. *Wyoming Hereford Ranch v. Hammond Packing Co.*, supra, 236 P. 764.

In order to gain perspective of the magnitude of the State Engineer's discretion for which the appellants contend, it is helpful for us to review the statutes pertaining to the granting of a water permit. It is these statutes and the water policy for which they stand that the State Engineer's change of use, place of use, point of diversion and means of conveyance order would circumvent because, if the State Engineer's position with respect to his powers in this area were to be sustained, the transfer of permit water could be effected through an amendment-of-error exercise without application for a new permit while all the time retaining the priority dates of the permits in question here. § 41–4–512. It is only when these water permit statutes are taken into account that it is possible for us to see the wisdom behind the legislature's refusal to enact a change of use, place of use and point of diversion statute applicable to water permits—as it did for water rights—and why the language of § 41–4–514(a) cannot possibly be interpreted to give the State Engineer any such broad powers as are contended for by appellants where water permits are concerned.

### Water permit statutes

Any person, association or corporation seeking to acquire a certificate of appropriation must, before commencing construction pertaining to any water works, apply to the State Engineer for and receive a permit to make such appropriation. The application must describe source of water supply, nature of the proposed use, location of ditches, canals, etc., the time when construction begins and when it is estimated it will be completed, and the time estimated for the complete application of the water to the proposed use. § 41–4–501, W.S.1977.

When an application for a permit to acquire the right to the beneficial use of the public water of the state of Wyoming is received by the State Engineer, he must date it and record it. He must see that the application contains all necessary information to show the location, nature and amount of the proposed beneficial use. Where the proposed use is for irrigation purposes, the application shall give the total acreage to be irrigated and the location thereof. If defective, the application shall be returned with reasons, and the time within which correction must be made is 90 days. If not so returned with proper corrections, the State Engineer shall cancel the filing or—for cause—grant an extension. § 41–4–502, W.S.1977.

The State Engineer must approve all applications which comply with the statutes and which contemplate the application of the water to beneficial use where the proposed use does not tend to impair the value of existing rights, or is otherwise detrimental to the public welfare. Those applications for permits to apply the waters of the state to beneficial use which do not meet these qualifications shall be disapproved. § 41–4–503, W.S.1977.

If the application for permit is approved, the applicant may proceed to construct the necessary works and take all steps necessary to apply the water to beneficial use and to perfect the proposed appropriation. § 41–4–504, W.S.1977.

The statutes provide for the Engineer to set time limits for completion of the works and application of water for beneficial use, and the Engineer is given authority to cancel the permit if the time limits are not complied with. § 41–4–506, W.S.1977.

Section 41–4–507, W.S.1977 provides for the filing of maps and plats of lands to be irrigated showing location of streams, proposed reservoirs, canals and other relevant data.

When the above statutory requirements have been complied with, final proof under oath for the appropriation of water may be made in the form and manner prescribed by statute. Notice of the proofs will be given by advertisement in the community where "the *water right* involved is situated" (em-

phasis added), § 41–4–511, W.S.1977, 1982 Cum.Supp., and which notice will contain the permit number, the date of priority (which is the date the application is filed § 41–4–512, W.S.1977), the name of the ditch, canal or reservoir, the name of the appropriator, the name of the stream from which the appropriation is made, and the amount of appropriation. The advertisement will say when the proofs are to be opened for public inspection and any party who claims an interest in any water right from the stream or streams to which the proofs refer shall have the right to protest the proposed adjudication. No contest having been instituted, the Board of Control will receive the proofs and if satisfied that the appropriation has been perfected in accord with the permit, it shall be the duty of the Board to issue a certificate of appropriation of water. § 41–4–511, W.S.1977. The priority of such appropriation shall date from the filing of the application in the Engineer's office. § 41–4–512, W.S. 1977.

▮ From this statutory summary, it can be seen, first, that there is no provision for a change of use, place of use or point of diversion of the waters authorized for a water permit. Secondly, it appears vividly clear that the legislature has taken extraordinary precautions to assign the permit waters to specific locations and use purposes with notice to all concerned as to how the water is to be utilized—how much will be taken from the water course and when and where the water course will be deprived of the water. The statutes also make room for protest by affected water users; they contemplate an efficient procedure for construction and completion of the works conceived by the permit, and it is provided that the Board of Control will receive proof and, if satisfied that all requirements have been met, issue a certificate of water appropriation with a priority date to be that upon which the original application was filed.

Under the heavy shadow of these statutory requirements for the acquisition of a permit to appropriate water, and the pro-

tection of all of those appropriators on the water course who are in any way affected, the State Engineer and GRDC nevertheless argue that the Engineer's authority which is described by the amendatory language in § 41–4–514(a), should be interpreted by this court to be broad enough to authorize the change of use, place of use, point of diversion and means of conveyance as contemplated by the Engineer's orders of February 1981, absent the safeguards provided water-rights holders. The result of such action would be to retain the priority dates of the permit applications while changing the entire purpose for which the permits here issued in the first instance, with the further and most devastating consequence of ignoring other existing and future users of the water course. Such a scheme would obviate the necessity of reapplying for water permits for the industrial use contemplated by Pacific Power and Light Company under the statutes applicable to the issuing of water permits. It would circumvent the safeguards contemplated for the transfers involving water rights as contemplated by § 41–3–104 and § 41–3–114(a), and it would give such unbridled, standardless authority to the Wyoming State Engineer as is not even reserved to the Board of Control where ripened and fully matured water rights are being considered for transfer.

A mere reading of these permit statutes should make clear that the legislature did not intend to grant transfer powers to the State Engineer under such a standardless, vague and indefinite grant of authority as is found to be contained in § 41–4–514(a).

In *Basin Electric Cooperative v. State Board of Control,* supra, we were concerned with the philosophy behind the change of use, place of use and point of diversion statutes (§ 41–3–104 and § 41–3–114(a)) which applied to water rights. That opinion found its genesis in the public policy of the state which contemplates the application of reserved water to a beneficial use, and we said that only so much of a water right could be transferred as had been historically beneficially used—that it was not possible to enlarge upon the historic benefi-

cial use of an appropriated water right through the device of changing use, place of use and point of diversion. We explained that the key to understanding the application of beneficial-use concepts to a change-of-use proceeding

"* * * is a recognition that the issues of *nonuse* and misuse are inextricably interwoven with the issues of change of use and change in the place of use. This is true even without the formal initiation of abandonment proceedings under the statutes. If an appropriator, either by misuse or failure to use, has effectively abandoned either all or part of his water right through noncompliance with the beneficial-use requirements imposed by law, he could not effect a change of use or place of use for that amount of his appropriation which had been abandoned. See *Rocky Mountain Power Company v. White River Electric Association,* 151 Colo. 45, 376 P.2d 158, 161, and *Flasche v. Westcolo Co.,* 112 Colo. 387, 149 P.2d 817." (Emphasis added.) 578 P.2d at 564.

In support of our conclusion that "nonuse and misuse are inextricably interwoven with the issues of change of use and change in the place of use" of a right to use water, we said:

"* * * An appropriator obtains a transferable water right only to the extent that he has put his appropriation to a beneficial use." 578 P.2d at 563.

In the same opinion we said:

"* * * The water right of an appropriator is limited to beneficial use even though a larger amount has been adjudicated.", (with citations) 578 P.2d at 563, and

"'* * * an appropriator of water obtains by his appropriation that only of which he makes a beneficial use * * *.'" 578 P.2d at 563, quoting from *Johnston v. Little Horse Creek Irrigating Co.,* 13 Wyo. 208, 79 P. 22, 24 (1904).

With these considerations at hand, we reach the following conclusion: There being no specific statutory authority for changing the use, place of use, point of diversion and means of conveyance of waters contemplated by a water permit, we go in search of the legislature's intention with respect to this issue as that intent is reflected in other provisions of the statute. The statutory authority for the granting of the permit is definite and explicit as regards the amount and place of water diversion, the use and place to which application of the water is to be made and the rights of other appropriators. In this case, the permittees have never applied the permit waters which they seek to transfer to any beneficial use whatever even though the permits have been granted for 60 or more years. This means that the permittees are possessed of nothing which qualifies for transfer since only water which has been beneficially applied is subject to sale and transfer. *Basin Electric Power Cooperative v. State Board of Control,* supra.

The reasoning for this conclusion is sound because the statutes disclose that—had the legislature intended that the interest of a permittee in the waters of the state was a transferable item—it would have established the standards and boundaries for such assignments of water interests as it did where adjudicated water rights are concerned, e.g., § 41–3–104 and § 41–3–114(a). But the legislature did not do this, and we are constrained to assume that it was because it was never intended that such interests would be qualified for transfer.

These considerations bear, then, upon our interpretation of § 41–4–514(a). If the only transferable interest in water is one that has been put to beneficial use,[12] it cannot, therefore, be successfully argued that the State Engineer has the right to transfer permit water which admittedly has never been utilized beneficially. We conclude that the appellants' position in this regard is untenable.

Section 41–4–514(a) must be said not to include the change of use, place of use, point of diversion and means of conveyance authority for yet another reason.

12. *Basin Electric Power Cooperative v. State*  *Board of Control,* supra.

The appellants argue that the following language authorizes the State Engineer to make the changes that his orders contemplate:

"The state engineer is hereby authorized, upon written petition of the owner, to amend any permit to appropriate water prior to adjudication by the state board of control *for the purpose of correcting errors or otherwise,* when in his judgment such amendment appears desirable or necessary; provided that the total area of lands may not exceed the area described in the original permit." (Emphasis added.) § 41–4–514(a), W.S.1977 (December 1977 pamphlet.)

That provision of the statute speaks to the *correcting of error* contained in a permit. We are at a loss to understand how it can seriously be argued that the State Engineer, when contemplating change and place of use, point of diversion and means of conveyance for these agriculture permits from Sublette County to industrial usage in Sweetwater County—134 miles away—was involved in a mistake-correcting exercise. If that is the contention of the appellants, it borders on the ridiculous. The fact of the matter is that GRDC and the State Engineer, while utilizing an error-correcting statute to accomplish their purpose, do not really take the position that a mistake was involved with the issuing of the original permits. The record is clear that the original permits were issued to the applicants to be utilized in the place and for the purposes indicated and therefore the State Engineer, by his order and amendment thereto, did not undertake to *correct* errors in the original permits. Instead, he simply assumed the authority to assign them to a different purpose and place of use altogether.

We held in *John Meier & Son, Inc. v. Horse Creek Conservation District of Goshen County,* Wyo., 603 P.2d 1283, 1286 (1979) that this statute (§ 41–4–514) "is self-limiting and narrow in its application." We said, "[i]t cannot be broadened and other elements added or injected by parties to the proceedings." While we also held that the statute grants the State Engineer broad discretion to amend the permit (as indicated by the thought that amendment may be made when in the opinion of the Engineer it is "desirable or necessary"), the exercise of this authority must nonetheless be limited to those situations where the Engineer had authority to act in the first instance, i.e., where there had been an error "or otherwise" which, in *Meier v. Horsecreek,* we found included ambiguity in the permit's authority-granting clause. That is the kind of correction that is contemplated by the word "otherwise" as it is included in the phrase,

"for the purpose of correcting errors or *otherwise."* (Emphasis added.)

In *John Meier & Son,* supra, it seems to be conceded that the ambiguous language contained in the disputed permits could not really be said to be "errors" but the ambiguities were nevertheless accepted by this court as presenting a problem which could be logically considered as having been contemplated by the "correcting errors or otherwise" language of the statute. We held that the ambiguity should be clarified to conform to the intention of the appropriators and the State Engineer and the Board of Control at the time the permits and certificates of appropriation were issued. It can hardly be said that this is the kind of error correcting "or otherwise" that even remotely approaches the assumption of authority which leads to a change from the place and purpose contemplated by the original permits to another place and another purpose 60 to 70 years later and 130 miles away. *That is not "correcting errors or otherwise"!* (Emphasis added.)

Here, unlike *John Meier & Son* (where the language in the original permits was ambiguous), the changes sought have nothing to do with the correction of original permit errors and therefore do not fall within the contemplation of the statute in question. Thus, the appellant's reliance upon John Meier & Son is misplaced. That case does not support their position.

## EJUSDEM GENERIS[13]

■ In ferreting out the meaning to be given the term "or otherwise" in § 41–4–514(a), the district court found that the doctrine of ejusdem generis is germane. We agree. This rule of statutory construction requires that the phrase "or otherwise" embrace only those things which are covered by the statute. In the case at bar, this means "correction of errors." We have long recognized the ejusdem generis rule of statutory construction which requires that

" * * * [w]hen a specific enumeration concludes with a general term, it is held to be limited to things of the same kind. [Sutherland] § 270. 'It is restricted to the same genus as the things enumerated.' " *People ex rel. School Dist. No. 3 v. Dolan,* 5 Wyo. 245, 39 P. 752, 755 (1895).

See also: *Lazy D Grazing Association v. Terry Land and Livestock Company,* 641 F.2d 844, 849–850 (10th Cir.1981).

In *People ex rel. School Dist. No. 3 v. Dolan,* 39 P. at 755, the court outlined the rules of statutory construction that require an examination of

" * * * the intent of the legislature in enacting the statute; but that we must do by a consideration of the context, other sections or acts in pari materia, and by the application of the usual and well-known rules of construction of words or terms employed. Unless, therefore, the context forces a different construction, or other provisions exist affecting this matter which lead to such a result, we are inclined, and indeed we are bound, to give to these words that construction which is required by the rules * * *."

The title to § 41–4–514, W.S.1977 is:

"Correction of errors in permits; petition for amended certificate of appropriation; hearings on petition; notice; costs; * *."

The forerunner of this statute provided only for the correction of errors in the description of land. It was amended in 1929 to permit the correction of errors other than in land description, and again amended in 1945 to include the word "otherwise." In *Scherck v. Nichols,* supra, 95 P.2d at 80, we said of the 1929 amendment that the "amendment, we think, merely broadened the scope of the correction." This also appears to be the effect of the 1945 amendment.

Article 3, § 24 of the Wyoming Constitution requires:

"No bill, except general appropriation bills and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject is embraced in any act which is not expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

The title to Chapter 118, S.L. of Wyoming 1945 which is essentially § 41–4–514, W.S.1975, insofar as the word "otherwise" is concerned, reads in pertinent part:

"AN ACT to amend and re-enact Section 122–415, Wyoming Revised Statutes, 1931 relating to correction of errors in permits by State Engineer and correction of certificates of appropriation of water by State Board of Control * * *."

It is to be noted that the word "otherwise" is not mentioned in the title. The title refers only to "correction of errors in permits" and "correction of certificates of appropriation." Therefore, it seems clear that the word "otherwise" must be read in conjunction with the word "correction" and may not extend beyond that. It has been held in many Wyoming cases that the object of the constitutional provision was to prevent surprise or fraud in legislation by means of provisions in bills the titles of which gave no intimation as to their real content. Chapter 102, S.L. of Wyoming 1929, which was amended by Chapter 118, S.L. of Wyoming 1945, bore virtually the same title:

**13.** We are in the debt of Judge Hamm for the aid furnished by his excellent memorandum opinion on this aspect of the law.

# 354

"AN ACT to amend and re-enact Section 846 and Section 847, Wyoming Compiled Statutes, 1920, authorizing state engineer to correct errors in permits."

Amendments subsequent to 1945 all referred to "correction of errors." *Hodgson v. Mountain & Gulf Oil Co.,* 297 F. 269, 272 (D.C.Wyo.1924), in interpreting the inuring clause, states:

> "'All permits or leases hereunder shall inure to the benefit of the claimant and all persons claiming through or under him by lease, contract, or otherwise, as their interests may appear.' [Comp.St.Ann. Supp.1923, § 4640–1/4j.]
>
> \*   \*   \*   \*   \*   \*
>
> "What is the interpretation of the term 'otherwise' with respect to the classification which immediately precedes it? The ejusdem generis rule of statutory construction is that a 'clean-up' phrase of this character will include only things of a like or similar kind, and nothing of a higher class than that which it immediately follows."

The court then said:

> "\* \* \* Unless, therefore, the court should disregard the ordinary and well-defined rule of statutory construction in its acceptance and meaning of the term 'otherwise,' as here presented, it would be necessary to exclude plaintiff from any rights or benefits accruing under the inuring clause."

*State v. Douglas,* 70 S.D. 203, 16 N.W.2d 489, 495 (1944) quoted from *Hodgson v. Mountain Gulf Oil Co.,* supra, with approval, and added:

> "In *Myers v. Seaberger,* 45 Ohio St. 232, 12 N.E. 796, 798, the phrase 'or otherwise controlled by him' in a statute requiring the listing for taxation of 'all moneys invested, loaned, or otherwise controlled by him as agent or attorney, or on account of any other person or persons', must be construed to mean controlled in a manner similar to the loaning and investing of money. In a statute prohibiting the selling, giving or otherwise disposing of intoxicating liquors without a license, the words 'or otherwise dispose of' must be construed to refer to a disposition of the same class as a sale or gift. *Roberson v. State,* 100 Ala. 37, 14 So. 554, 555. 'Otherwise improve' following the words 'to open, widen, and extend' a street refers only to such improvements as are like opening and widening and must be limited to the preceding language of the section. *Methodist Episcopal Church v. City of Wyandotte,* 31 Kan. 721, 3 P. 527, 530.
>
> "General and specific words in a statute which are associated together and which are capable of an analogous meaning take color from each other so that the general words are restricted to a sense analogous to the less general. The general words are deemed to have been used not to the wide extent which they might bear if standing alone, but as related to words of more definite and particular meaning with which they are associated. The term 'otherwise' when preceded by a specific enumeration is commonly given a restricted meaning and limited to articles of the same nature as those previously described. 50 Am.Jur. 244–246, and cases thereunder cited."

Other cases holding similarly are *Pennsylvania Steel Co. v. Washington & Berkeley Bridge Co.,* 194 F. 1011, 1017 (D.C.1912); *Hickman v. Cabot,* 183 F. 747, 106, 10 E.C.A. 183 (1910); and *Reiche v. Smythe,* 80 U.S. (13 Wall) 162, 20 L.Ed. 566 (1872).

We then conclude that the word "otherwise" must be read in conjunction with the word "correction" and that the facts of this case show that the State Engineer was not involved in the correction of errors or anything like correction of errors when he assumed jurisdiction to change the use, place of use, point of diversion and means of conveyance of the waters embraced by the permits in question here. It was more akin to filing a whole new application for a permit at a distant point to create a new purpose for the appropriation—to sell waters for industrial purposes and not irrigation as originally intended.

In conclusion, we hold that § 41–4–514(a), W.S.1977, does not contain authority for the Wyoming State Engineer to change the use, place of use, point of diversion or means of conveyance of the water envisioned by the permits in contest here, and there is no other statute which grants him any such authority. The only way that such transfers may be made, according to the statutes extant, is through the utilization of § 41–3–104 and § 41–3–114(a), W.S. 1977. Since these statutes pertain only to transfers where *water rights* are concerned, and since the waters embraced by the permits before this court cannot qualify as water rights since they have not been applied to a beneficial use as conceived by § 41–3–101, W.S.1977, it follows that there exists no statutory authority to transfer such interest in the waters of the state of Wyoming as are contemplated by a water permit.

Affirmed.

THOMAS, Justice, specially concurring.

The majority opinion holds that:

1. The State Engineer has no express statutory authority to approve a change in use, a change in the place of use, a change in the point of diversion and a change in the means of conveyance with respect to a water permit.

2. The State Engineer has no implied authority to approve a change in use, a change in the place of use, a change in the point of diversion and a change in the means of conveyance with respect to a water permit arising out of his statutory authority to amend permits. Section 41–4–514(a), W.S.1977.

a. Such an implication would be contrary to the intent of the legislature manifested in the statutory scheme providing for the appropriation of water to beneficial use.

b. Such an implication would be contrary to the policy of the State of Wyoming relating to the appropriation of water to beneficial use.

c. Such an implication would be contrary to the recognized precept of statutory interpretation which we style ejusdem generis.

With all of these holdings I agree.

This concurring opinion is motivated by the conclusion of the majority to treat as moot the questions which relate to the appropriate roles of and the relationship between the State Engineer and the Board of Control. These were treated as issues of import by the state authorities in connection with this case. Since a resolution, at least in part, of these questions provides an additional ground for affirming the trial court, I would treat with them in this way. A comparison of Art. 8, § 2 of the Constitution of the State of Wyoming [1] with Art. 8, § 5,[2] suggests to me that the Constitutional Convention intended that the State Engineer should be the chief administrative officer in connection with the supervision of the waters of the state and the officers connected with its distribution. As such he is a member of the Board of Control, which is the state agency to which is granted discretionary authority with respect to the supervision of the waters of the state and of their appropriation, distribution and diversion, and of the officers connected therewith.

1. Art. 8, § 2, Wyoming Constitution, provides:

"There shall be constituted a board of control, to be composed of the state engineer and superintendents of the water divisions; which shall, under such regulations as may be prescribed by law, have the *supervision of the waters of the state and of their appropriation, distribution and diversion, and of the various officers connected therewith.* Its decisions to be subject to review by the courts of the state." (Emphasis added.)

2. Art. 8, § 5, Wyoming Constitution, provides:

"There shall be a state engineer who shall be appointed by the governor of the state and confirmed by the senate; he shall hold his office for the term of six (6) years, or until his successor shall have been appointed and shall have qualified. He shall be president of the board of control, and shall have *general supervision of the waters of the state and of the officers connected with its distribution.* No person shall be appointed to this position who has not such theoretical knowledge and such practical experience and skill as shall fit him for the position." (Emphasis added.)

Turning then to the statutory provisions relating to the State Engineer, found in §§ 9–1–901, et seq., W.S.1977, and comparing those with the statutes relating to the Board of Control found in §§ 41–4–201, et seq., W.S.1977, I am persuaded that the suggestion made by the Constitutional Convention has been effectuated by the legislature. An examination of the manner in which our statutory scheme relating to the beneficial use of the waters of the state functions leads to the conclusion that discretionary authority is afforded only to the Board of Control. The functions of the State Engineer are essentially administrative and ministerial in nature. The State Engineer has no discretionary authority relating to the waters of the state except for whatever discretion may be exercised in determining the manner in which his ministerial functions will be performed. For this additional reason I would hold that the State Engineer had no authority to approve a change in use, a change in place of use, a change in the point of diversion and a change in the means of conveyance for water permits because such authority would require the exercise of discretion which I conclude the legislature has not afforded to the State Engineer. This approach is consistent with the Constitution of the State of Wyoming.

I would agree that the Board of Control did not have jurisdiction to review the purported decision of the State Engineer pursuant to § 41–4–517, W.S.1977. Obviously this case does not fit within the language of that particular statute. I would, however, use that statute as an example of a legislative manifestation of the roles which I have ascribed to the State Engineer and the Board of Control. The language of § 41–4–517, W.S.1977, fits neatly into a management scheme in which the State Engineer exercises only ministerial functions, and discretion is exercised by the Board of Control. At this juncture I must sound one discordant note with respect to the majority opinion. Since I am persuaded that the discretionary authority which the appellants ascribe to the State Engineer resides, if anywhere, in the Board of Control, I find error

in the action of the district court in entertaining the appeal from the order of the State Engineer. That order lacks the requisite administrative finality to vest the district court with jurisdiction to review.